Chief Judge Breitel.
In an action by the City of "White Plains to enforce its zoning ordinance and enjoin use of a single-family house as a “ group home ” for 10 foster children, defendants, Abbott House, Inc. and the owners of the house, appeal. Abbott House, a private agency licensed by the State to care for neglected and abandoned children, leases the house in an “ B-2 ” single-family zone. The city contends that the group home is not a single-family use, but either a philanthropic institution, allowed only by special permit, or a boarding house, wholly excluded from an “ B-2 ” zone. The city obtained summary judgment in the courts below.
The issue is a narrow one: whether the “ group home ”, consisting of a married couple and their two children, together with 10 foster children, qualifies as a single “ family ” unit, under the ordinance. It is concluded that the group home, set up in theory, size, appearance and structure to resemble a family unit, fits within the definition of family, for purposes of a zoning ordinance. Hence, the order of the Appellate Division should be reversed and summary judgment granted to defendants.
Abbott House, as noted, is a not-for-profit membership corporation licensed by the State to care for neglected and abandoned children. In 1971, legislation was enacted permitting so-called “ authorized agencies ” like Abbott House to establish “ group homes ”, under strict State regulation and inspection, where from 7 to 12 foster children might live in a simulated family atmosphere (Social Services Law, § 374-c; L. 1971, ch. 677). The group home concept is relatively new; instead of being institutionalized, neglected or abandoned youngsters are divided into small groups and placed in homes with an adult couple, approximating a normal family environment. In this way, it is thought, the children obtain many of the benefits of *304 home life. Siblings may be kept together. Whatever other advantages there are to the group home, it is also less costly than institutionalized care. Abbott House also operates a traditional dormitory-style institution elsewhere in the State which houses over 100 children.
The particular group home in this case consists of an adult couple, the Seards, their two children, and 10 foster children. Of the 10, there are seven siblings, the Bell children ranging in age from 7 to 13, and three unrelated youngsters. The Seards are paid a salary to care for the children and all household expenses are paid by Abbott House, with substantial funding to it by the City of New York. Abbott House has a five-year lease on a house owned by the Ferraiolis who are also defendants. The children, natural and foster, live together as if they were brothers and sisters and the Seards were their common parents. The household is maintained as a family would be in a single housekeeping unit with kitchen facilities.
The Ferraioli house is in an R-2 zone of the city where the principal permitted uses are as a “ Single family dwelling for one housekeeping unit only ”, fire houses, police stations, public schools and churches. As an accessory use, a resident family may include up to two roomers. Welfare uses, including philanthropic institutions, are special uses permitted in R-2 districts or other residential districts only at the discretion of the zoning board of appeals. Abbott House has not sought permission from the board. Rooming houses are permitted in certain residential districts of the city, but not in an R-2 zone.
The zoning ordinance defines a family: “ A ‘ family ’ is one or more persons limited to the spouse, parents, grandparents, grandchildren, sons, daughters, brothers or sisters of the owner or the tenant or of the owner’s spouse or tenant’s spouse living together as a single housekeeping unit with kitchen facilities.”
It is significant that the group home is structured as a single housekeeping unit and is, to all outward appearances, a relatively normal, stable, and permanent family unit, with which the community is properly concerned. If that be true, the group home is no less qualified to occupy the Ferraioli house than are any of the neighboring families in their respective homes.
The group home is not, for purposes of a zoning ordinance, a temporary living arrangement as would be a group of college *305 students sharing a house and commuting to a nearby school (cf. Village of Belle Terre v. Boraas, 416 U. S. 1). Every year or so, different college students would come to take the place of those before them. There would be none of the permanency of community that characterizes a residential neighborhood of private homes. Nor is it like the so-called “ commune ” style of living. The group home is a permanent arrangement and akin to a traditional family, which also may be sundered by death, divorce, or emancipation of the young. Neither the foster parents nor the children are to be shifted about; the intention is that they remain and develop ties in the community. The purpose is to emulate the traditional family and not to introduce a different “ life style ”.
Of course, the Supreme Court of the United States, in the recent Belle Terre case, has held that it is a proper purpose of zoning to lay out districts devoted to “ family values ” and “ youth values ”. Hence, toward that end those uses which conflict with a stable, uncongested single family environment may be restricted. ,High density uses, for example, may be restricted; so too those uses which are associated with occupancy by numbers of transient persons may be limited. By requiring single family use of a house, the ordinance emphasizes and ensures the character of the neighborhood to promote the family environment. The group home does not conflict with that character and, indeed, is deliberately designed to conform with it.
Thus the city has a proper purpose in largely limiting the uses in a zone to single-family units. But if it goes beyond to require that the relationships in the family unit be those of blood or adoption, then its definition of family might be too restrictive (see Kirsch Holding Co. v. Borough of Manasquan, 59 N. J., 241, 250; City of Des Plaines v. Trottner, 34 Ill. 2d 432 [per Schaefer, J.]; Boston-Edison Protective Assn. v. Paulist Fathers, 306 Mich. 253). Zoning is intended to control types of housing and living and not the genetic or intimate internal family r elations of human beings.
Whether a family be organized along ties of blood or formal adoptions, or be a similarly structured group sponsored by the State, as is the group home, should not be consequential in meeting the test of the zoning ordinance. So long as the group home *306 bears the generic character of a family unit as a relatively permanent household, and is not a framework for transients or transient living,, it conforms to the purpose of the ordinance .(see Planning & Zoning Comm. v. Synanon Foundation, 153 Conn., 305, 308). Moreover, in no sense is the group home an institutional arrangement, which would be another matter. Indeed, the purpose of the group home is to be quite the contrary of an institution and to be a home like other homes.
In short, an ordinance may restrict a residential zone to occupancy by stable families occupying single-family homes, but neither by express provision nor construction may it limit the definition of family to exclude a household which in every but a biological sense is a single family. The minimal arrangement to meet the test of a zoning provision, as this one, is a group headed by a householder caring for a reasonable number of children as one would be likely to find in a biologically unitary family. (See, generally, cases discussed in-3 Rathkopf, The Law of Zoning and Planning, ch. 79, §§ 33, 53, esp. 1972 Cum. Supp., pp. 167-173; Ann., Family — What Constitutes, 172 A. L. R. 1172.)
Defendants contend, and the issue raised is not without trouble, that the zoning ordinance, if it prohibits a group home use in an R-2 district, absolutely or without a special permit, contravenes the State’s Social Services Law. That law, as discussed above, authorizes licensed agencies to establish group homes in appropriate neighborhoods (Social Services Law, § 374-c). In somewhat analogous circumstances, courts have held local zoning ordinances void as contrary to State policy when they restricted an 11 agency boarding home ’ ’, a day care center, and a center for delinquent youths (Abbott House v. Village of Tarrytown, 34 A D 2d 821; Matter of Unitarian Universalist Church v. Shorten, 63 Misc 2d 978, 980-981 [Meyer, J.]; Nowack v. Department of Audit & Control, 72 Misc 2d 518, 520). Certainly, by constitutional provision and State policy, the care of neglected and abandoned children is a paramount concern (N. Y. Const, art. VII, § 8, subd. 2; Matter of Wiltwyck School v. Hill, 11 N Y 2d 182, 193). Since it is concluded, however, that a group home is a family, this broader question need not now be resolved by this court.
*307 Defendants did not cross-move for summary judgment; they simply opposed the city’s motion. CPLR, however, provides that any party, if entitled, may be granted summary ¡judgment without the necessity of a cross motion (CPLR 3212, subd. [b]). Since, as a matter of law, the group home is a family for purposes of a zoning Qrdinance, defendants are entitled to summary judgment dismissing the complaints
Accordingly, the order of the Appellate Division should be reversed, with costs, and summary judgment granted to defendants dismissing the complaint.
Judges Jasen, Gabrielli, Jones, Wachtler and Stevens concur; Judge Rabin taking no part.
Order reversed, etc.