James F. Niehoff, J.
This is a proceeding pursuant to CPLR article 78 wherein a judgment is sought annulling the determination of the respondent Board of Zoning and Appeals of the Town of North Hempstead which, on appeal, sustained a denial of the building permit by the Building Manager of the Town of North Hempstead.
The petitioner, Group House of Port Washington, Inc., is a not-for-profit corporation whose charter was approved by the Board of Social Welfare and is subject to the rules, supervision, visitation and inspection by the Board of Social Welfare. For the purposes of establishing a group home in accordance with the Social Services Law and the rules of the Board of Social Welfare petitioner purchased the premises at number 1288 Port Washington Boulevard in Port Washington, Town of North Hempstead. The subject property is situated in a district zoned Residence B. In October of 1974, it made an application to the Building Manager of the Town of North Hempstead for a permit to make alterations to the building on the property in order to adapt it for use as a group home and to comply with the rules and regulations of the New York State Department of Social Services. The application was denied upon the ground that the use intended is not a permitted use under section 70-34 of the Code of the Town of North Hempstead. Section 70-34 permits in a Residence B District "All permitted uses set forth in Article II applicable to R-AAA Districts and Article III applicable to R-AA Districts.” Included as a permitted use in both the R-AAA District and the R-AA District is use of a building as a single-family detached dwelling (Code of the Town of North Hempstead, § 70-5.A). The notice of disapproval issued by the Manager of the Town *636 of North Hempstead Building Department specified that the applicant sought “to use the premises for other than a one family dwelling.” An appeal was taken to respondent board, which, after a public hearing, sustained the building manager’s decision.
In rendering its decision, respondent made some 31 separate findings. For the most part, they are irrelevant to the issue which was before it, that is, whether the building manager was correct in his determination that a group home is not a permitted use in a Residence B District. The only significant findings are those numbered 13, 15, 16 and 18 which read as follows:
“13. The use of the premises as a group home facility for children with supervisory personnel as proposed by the applicant is not a permitted use in a Residence B District.
"15. Pursuant to the provisions of Section 267 of the Town Law and the subsequent adoption of the Building Zone Ordinance of the Town of North Hempstead in 1929 and the Code of the Town of North Hempstead in 1973, FAMILY is defined as follows:
'FAMILY — One (1) or more persons related by blood, marriage or legal adoption residing or cooking or warming food as a single housekeeping unit; with whom there may not be more than two (2) boarders, roomers or lodgers who must live together in a common household. A boarder, roomer or lodger residing within the family household is a person who does or does not pay consideration therefor to such family for such residence.’ A Single-Family Dwelling is defined as follows:
'SINGLE-FAMILY DWELLING — A building designed for and occupied exclusively as a home or residence for not more than one (1) family.’
“16. The use of the premises as a group home facility for a group family as proposed by the applicant does not conform to the Code with respect to the requirements for a family or a single family dwelling in a Residence District.
"18. The use of the premises in a Residence B District as proposed by the applicant is not a single-family dwelling.”
By those findings, respondent board has determined that applying the definition of "family” contained in its ordinance, a group home does not constitute a one-family unit and is, therefore, not a permitted use in a Residence B District.
The issue, then, becomes a narrow one: whether the “group *637 home”, consisting of two supervisory personnel, called foster parents, and a maximum of seven children, qualifies as a single-family unit so as to constitute a permitted use under the Town of North Hempstead Zoning Ordinance.
Petitioner argues that a group home organized pursuant to the Social Services Law is a one-family residential use; that as such it is a permitted use in a residential district; and that, therefore, respondent should be ordered to direct the building department manager to issue a building permit in accordance with the plans filed. In support of its argument petitioner relies upon the case of City of White Plains v Ferraioli (34 NY2d 300).
Respondent, on its part, argues that a group home is not a permitted use in the Town of North Hempstead Residence B District and that the City of White Plains v Ferraioli case is distinguishable.
In White Plains v Ferraioli the group home consisted of an adult couple, their 2 children and 10 foster children 7 of which were siblings. The Ferraioli group home was located in a residential zone which permitted uses such as a " 'Single family dwelling for one housekeeping unit only’ ” (34 NY2d 300, 304, supra). Chief Judge Breitel writing for the court (which permitted the group home to be maintained in a single-family zone) made it abundantly clear that for the purpose of zoning a municipality may not write or construe an ordinance in such a manner as to limit the definition of a "family” to persons related by blood, marriage or legal adoption. Thus, he wrote (pp 305-306):
"Whether a family be organized along ties of blood or formal adoptions, or be a similarly structured group sponsored by the State, as is the group home, should not be consequential in meeting the test of the zoning ordinance. So long as the group home bears the generic character of a family unit as a relatively permanent household, and is not a framework for transients or transient living, it conforms to the purpose of the ordinance (see Planning & Zoning Comm, v Synanon Foundation, 153 Conn 305, 308). Moreover, in no sense is the group home an institutional arrangement, which would be another matter. Indeed, the purpose of the group home is to be quite the contrary of an institution and to be a home like other homes.
"In short, an ordinance may restrict a residential zone to occupancy by stable families occupying single-family homes, *638 but neither by express provision nor construction may it limit the definition of family to exclude a household which in every but a biological sense is a single family. The minimal arrangement to meet the test of a zoning provision, as this one, is a group headed by a householder caring for a reasonable number of children as one would be likely to find in a biologically unitary family. (See, generally, cases discussed in 3 Rathkopf, The Law of Zoning and Planning, ch 79, §§ 33, 53, esp 1972 Cum Supp, pp 167-173; Ann, Family — What Constitutes, 172 ALR 1172.)”
In the more recent case of Matter of Moore v Nowakowski (46 AD2d 996), the Appellate Division, Fourth Department, construed the White Plains case as holding that "as a matter of law * * * a 'group home’, as authorized under provisions of article 6 of the Social Services Law, qualifies as a 'family’ unit for zoning ordinance purposes”.
Even if the Appellate Division has placed too sweeping an interpretation on the White Plains case it can hardly be denied that such case stands for the proposition that a municipality may not exclude from the definition of "family” a group sponsored by the State, as is the group home, if it meets the test spelled out in the White Plains case of being "a group headed by a householder caring for a reasonable number of children as one would be likely to find in a biologically unitary family” (34 NY2d 300, 306, supra). The group home proposed herein meets that test.
While it is true that the group home in White Plains was structured in a fashion which more closely resembled the typical or "normal” family unit than the group home proposed herein, the fact remains that the purpose of the instant home is to emulate the traditional family by having a householder caring for a reasonable number of children thereby bearing the generic character of a family unit. Thus, this case does not present a fact pattern such as that found in Village of Belle Terre v Boraas (416 US 1).
With respect to certain other findings by respondent, it is noted that although reference is made to code violations, no specific violations are spelled out. Therefore, the court must assume that none, in fact, exists. No credence is given to . general statements concerning lack of appropriate lighting and ventilation or to the creation of a dangerous condition since there, again, no specifics are given.
Under the circumstances judgment is granted in favor of *639 petitioner annulling the determination of respondent and directing that a building permit be issued in accordance with the application therefor.