45 N.Y.2d 266 (1978)
Group House of Port Washington, Inc., Respondent,
v.
Board of Zoning and Appeals of the Town of North Hempstead, Appellant. Richard Rafinski et al., Intervenors.
Court of Appeals of the State of New York.
Argued June 7, 1978.
Decided July 11, 1978.
Edward G. McCabe, Town Attorney (Joseph A. Guarino, Peter R. Mineo and Howard M. Sinnott II of counsel), for appellant.
Anthony G. Nowachek for intervenors.
Leonard Weintraub and Ileen V. Crowley for respondent.
Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz and Robert J. Schack of counsel), for the Department of Social Services of the State of New York, amicus curiae.
Judges JONES, WACHTLER and COOKE concur with Judge GABRIELLI; Chief Judge BREITEL dissents and votes to reverse in a separate opinion in which Judges JASEN and FUCHSBERG concur.
*270 GABRIELLI, J.
The limited, rather narrow issue presented on this appeal is whether the Town of North Hempstead may so stringently apply the term "family" as used in its zoning ordinances as to exclude a small "group home" of the type described herein used for the foster care of children. We hold that it may not.
Petitioner is a not-for-profit corporation which has purchased a house in Port Washington, an unincorporated area of the town. The applicable zoning ordinance allows only one-family residences to exist in the section of Port Washington in which the house is located. The ordinance defines a family as "[o]ne (1) or more persons related by blood, marriage or legal adoption residing or cooking or warming food as a single housekeeping unit; with whom there may not be more than two (2) boarders, roomers or lodgers who must live together in a common household". At the time this proceeding was commenced, petitioner had determined to use the house it purchased as a "group home" for the care of children as is authorized by section 374-c of the Social Services Law. Believing that certain structural modifications were necessary for its purposes, petitioner applied to the town building commissioner for a building permit. The commissioner denied the permit, declaring that a "group home" was not a permitted use in that area. The commissioner's refusal to issue a permit was sustained by respondent board of zoning and appeals, and petitioner then commenced this article 78 proceeding seeking to annul the decision of the board.
Petitioner has proffered two alternative reasons why it is entitled to a building permit. First, petitioner argues that a "group home" is a family within the meaning of that term as it is used in the zoning ordinances of the town; alternatively, petitioner contends that the State has so pre-empted the area of child care that it would be a violation of public policy to allow a municipality to exclude a "group home" approved by the State. Supreme Court ruled in petitioner's favor, concluding that in light of this court's decision in City of White Plains v Ferraioli (34 N.Y.2d 300), the "group home" which petitioner sought to create must be considered a family for zoning purposes. The Appellate Division disagreed with that conclusion, but nonetheless affirmed the judgment of Supreme Court on the ground that a municipality may not utilize its *271 zoning powers so as to exclude a "group home" approved by the State. The order of the Appellate Division should be affirmed, but on the narrow ground that the "group home" as described by petitioner before the commissioner and the board cannot be distinguished from a "natural" family. We need not, and accordingly we do not reach the broader question whether the State has pre-empted this area to the extent that a municipality may not forbid the establishment of a "group home" authorized under State law.
Before discussing the merits of this appeal in detail, it is necessary to first deal with a preliminary procedural question. As noted above, this challenge was originally commenced as an article 78 proceeding seeking to compel the issuance of a building permit. At some undisclosed time after the petition was filed, however, petitioner decided that the proposed structural modifications were in fact unnecessary. Petitioner has apparently commenced operation of its "group home" and no longer requires a building permit. It has been suggested that this proceeding is now moot. Although this is true to the extent that the relief originally sought by petitioner is no longer needed, there nonetheless continues to exist a timely and justiciable controversy between these parties, since petitioner is operating what respondent considers to be an illegal nonconforming use. To dismiss this matter as moot would be unrealistic in the extreme, since the question then would simply have to be relitigated in another form. Rather than countenancing such an unnecessary waste of both parties' time and money, as well as increasing the ever heavy calendars of the courts, we have determined to convert this article 78 proceeding into an action seeking declaratory relief (see CPLR 103, subd [c]).
While the power to zone is a broad one, it is not without limit. It may be exercised only in pursuit of some valid public purpose and cannot serve to justify arbitrary exclusionary efforts. It is now settled law that a community may appropriately limit the use of certain neighborhoods to single-family residences. As the Supreme Court of the United States has remarked in Village of Belle Terre v Boraas (416 US 1, 9): "A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one * * *. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones *272 where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people."
Nonetheless, a community may not, under the guise of protecting such values, apply completely arbitrary restrictions. The "group home" in the present case, as described in the record before us, is the functional and factual equivalent of a natural family, and to exclude it from a residential area would be to serve no valid purpose. Thus, we refuse to interpret the town ordinance as forbidding the establishment of "group homes" of the type described in this opinion in an area zoned exclusively for one-family residences.
The "group home" which this record presents will consist essentially of two permanent surrogate parents and seven children. The surrogate parents are to live in the house with the children, and to create a stable home environment for them. There will also be available temporary replacements for the surrogate parents, who will, like most parents, occasionally need some time away from the children. The children themselves are to be drawn from the Port Washington area. Thus, they will already be residents of the community. They will continue to attend the local schools, and will place no extra or additional burden upon the community.
The "group home" is intended to serve as a home for a few children who, because of an unhappy home life, simply cannot thrive and grow if they remain with their natural families. This home is not to be a detention center for persons in need of supervision, nor is it to serve as a place of treatment for the mentally disturbed youngster, although it will of course provide psychiatric counseling. Rather, this "group home" is intended to function as a replacement family for the victim of an unhappy home who, if left to struggle unsuccessfully with his or her natural family, might well become tomorrow's delinquent. The "group home" is to provide such children with a stable, family-like existence, to give them the support and nurture they need if they are to grow into mature individuals capable of dealing with the complexities of life.
Much ado has been made about petitioner's frank statement that it does not wish to keep these children in the "group home" until they reach maturity. Instead, the "group home" is intended to care for the children and prepare them for an eventual hoped for return to their natural families, if either the children become capable of handling the problems that exist in their natural families or if the family situations from *273 which they come should themselves improve. Thus, it is suggested that this "group home" is a boarding house for transients, more akin to a college fraternity house than to the type of foster care "group home" which we found to be a family in the White Plains case. This argument is specious, for it would wrench out of context and place undue emphasis upon certain language used in that case, while at the same time simply ignoring the basic principles and rationale expressed therein.
Any foster care program, whether it be petitioner's "group home" for seven foster children or the somewhat larger "group home" challenged in White Plains, is in a very real way "temporary", since foster care by its very nature is simply a method of caring for children until they can either be returned to their natural parents or until an adoptive home can be found for them. Thus, the argument that petitioner's "group home" is not a family simply because petitioner hopes to eventually return the children to their natural families is unconvincing. If this rationale were accepted, it could as readily be applied to allow the exclusion of a family with more than two foster children under this town ordinance. Such a result would, of course, be absurd. The flaw in respondent's position is that it would have us simply take the word "temporary", give it some talismanic significance, and apply it to exclude any "group home" regardless of the underlying realities.
Petitioner's very purpose is to create a stable, family type environment for children whose natural families unfortunately cannot provide such a home. As such, petitioner's "group home" would in no way detract from the family and youth values which one-family zoning is intended to protect. In fact, petitioner's "group home" might actually support and further those values even more effectively than certain natural families. If petitioner's "group home" is to be a success, it would most appropriately be placed in just such a quiet, residential neighborhood, for that is the very type of atmosphere which it seeks to emulate.
The surrogate family which petitioner hopes to create is in fact a permanent family structure, and not a temporary residence for transients. Although some of the resident children will be replaced by others as time passes, the family unit itself will continue. Moreover, regardless of the pious intentions of petitioner to return each child to its natural family as *274 soon as possible, the grim realities of life are such that any such return may often be delayed for a considerable time, and may in some cases never eventuate.
Finally, we would emphasize that our decision today is limited to homes such as that described in this opinion, which serve as the functional equivalent of a family, for the exclusion of such groups would in no way further any valid public purpose. Whether a particular "group home" comes within this description is essentially a factual question. Different factors would exist were petitioner to convert its group house, for example, from the type of operation described above into a home for delinquents or the mentally disturbed, and we express no opinion as to the proper result in such a case. Thus, we conclude only that the "group home" described in this opinion is a permitted use as a one-family dwelling under the town zoning ordinances. Should the nature of the house change with the passage of time, however, should it become less of a surrogate family and more of an institution, it might then become an unpermitted use. On this record, however, we must conclude that petitioner's "group home" is indeed a family.
Accordingly, the order appealed from should be modified, with costs to petitioner, to the extent of converting this article 78 proceeding into an action seeking declaratory relief, and judgment should be entered in favor of petitioner declaring that the "group home" described in this opinion is a family for purposes of respondent's zoning ordinance.
Chief Judge BREITEL (dissenting).
The Appellate Division held, quite correctly in my view, that the proposed group home does not qualify as a "family", even as that term was liberally expanded in City of White Plains v Ferraioli (34 N.Y.2d 300). The Appellate Division also held, however, that by enacting legislation authorizing group homes the State had pre-empted the right of local governments to make zoning laws precluding group homes. That holding is erroneous and involves reasoning avoided as a ratio decidendi in the White Plains case.
The arrangement of the Port Washington facility does not meet the liberal minimal test stated in the White Plains case, that is, it is not "a group headed by a householder caring for a reasonable number of children as one would be likely to find in a biologically unitary family" (at p 306). I therefore respectfully *275 dissent and vote to reverse and dismiss the petition or, in the alternative, to convert the proceeding into an action and declare that the group home in this case is not a family for purposes of the town's zoning ordinance.
The Port Washington facility was set up to house unadapted disturbed children, "far more disturbed than the average young person", only until continuing psychiatric care enables the children to be reunited with their families. They are supervised by an alternating staff the members of which periodically return elsewhere. Extension of the definition of "family" to include the proposed group home misperceives the functional interpretation applied to "family" in the City of White Plains case and, as a result, undermines the salutary purpose of single-family zoned districts. Moreover, it distorts the definition of "family" in the ordinance, a distortion impermissible even under the guise of interpretation or construction.
It is of course no longer argued that only persons related by blood or formal adoption may constitute a family under the ordinance, if liberally interpreted as it should be. Thus, on this view, a family with foster children would not be barred from a single-family zoned district. It does not follow, however, that every group home authorized under section 374-c of the Social Services Law is a family for zoning purposes, the only category relevant. The household, to qualify under the ordinance, in every sense but a biological one must function as a stable, single-family unit, albeit occasionally changing in composition as even a private family might and does. (Semble, contra, Little Neck Community Assn. v Working Organization for Retarded Children, 52 AD2d 90, 94, mot for lv to app den 40 N.Y.2d 803; Living Resources Corp. v Burns, 91 Misc 2d 919.)
Because the group home in the White Plains case was in "theory, size, appearance and structure" set up to resemble a traditional family unit, the character of the neighborhood would not be impaired. The home consisted of a resident married couple, their own resident two children, and ten foster children, seven of whom were siblings. There was no shifting about contemplated; "the intention [was] that they remain and develop ties in the community" (34 NY2d, at p 305).
In contrast, the proposed Port Washington home in key respects differs from a traditional family. Instead of one *276 married couple, two alternating sets of persons, not specified as to sex or marital status, are to be employed as "houseparents", one set for weekdays and the other set for weekends and holidays. Nor does it appear that the children could be effectively integrated into the community, assuming, dubiously, that that was intended. The goal of the home, and that of the psychiatric treatment given, is that the youngsters be returned to their own parents as soon as possible. While staying at the Group House, the children would even visit and be visited by their natural parents. As opposed to a "relatively permanent" household, the framework of the Group House allows for, if it does not promote, the housing of transients. Indeed, the more successful the enterprise the greater the movement in and out of the home.
To hold that the instant home falls within the definition of "family" overstrains the acceptable reach of statutory interpretation and even construction. Inclusion of the proposed home under the term "family", notwithstanding the alternating "houseparents" and the high potential for transient children, would involve precisely the overreaching kind of statutory interpretation required to hold, as did the Appellate Division in this case, that the State legislation authorizing group homes has pre-empted their exclusion by local zoning ordinances.
Even more problematic are the implications. If the instant home qualifies as a single-family unit, what of the residence intended to house children for two or three months and no longer. As a practical matter, the children in such a home would not likely be attending community schools or using community recreation facilities, as in some cases which have already arisen (see People v Saint Agatha Home for Children, Town Ct, Town of Pound Ridge, Sept. 26, 1977, EICHELBURG, J., revd App Term, May 9, 1978). So, too, if this proposed group home is allowed, logically 5 or 10 more should be permissible in the same area. While any number of homes designed to conform practically with a community zoned for single-family homes should not be objectionable, a like number of homes resembling the Port Washington facility could, perhaps irreversibly, undermine the stability and tranquil atmosphere to which the majority opinion refers in discussing the Belle Terre case (Village of Belle Terre v Boraas, 416 US 1).
None of this is to cast doubt on the valuable purposes of the *277 proposed group home. The remedy, if there should be one, would be State legislation mandating acceptance of the facilities but including, undoubtedly, controls and restrictions to prevent the subversion of equally valuable single-family communities.
In sum, each group home involves, almost invariably, its own complex of facts (see, e.g., Little Neck Community Assn. v Working Organization for Retarded Children, 52 AD2d 90, supra; see, generally, What Constitutes A "Family" Within Meaning of Zoning Regulation or Restrictive Covenant, Ann., 71 ALR3d 693). A kind of line drawing, then, however difficult a process, is inevitable. Whether single-family unit treatment is appropriate in a particular case requires analysis and sensitivity to subtle distinctions. Ultimately, the question is whether in theory, size, appearance, and structure the home is set up to emulate a family. Neither the need for the kind of facility proposed nor the unquestioned motives of petitioners should obscure the transient character of the proposed Port Washington home and the ill effects it could have on the community, and especially so if multiplied in number. A house that is built like a home is not necessarily a home. A house with a shifting group of children in need of continuing psychiatric care, and with shifting sets of adults, potentially all unrelated to one another and regularly returning elsewhere, is not a home.
There is no doubt that in statutory interpretation and construction the courts may and do apply standards allowing the effectuation of the intent of the lawmaker. But there are finite limits, even if no sharp line, between interpretation which is permissible and that which is not. So, in the White Plains case (supra) the court looked to the purpose of the zoning ordinance and expanded its meaning, quite liberally, to accomplish the purpose, even though the interpretation went beyond the literal and even plain meaning of the zoning ordinance. It is quite another thing, by an evasive process, to stretch the liberal interpretation to still another and even more liberal application; and this could go on endlessly. Such a process is not sound judicially and does not accord with principles of judicial restraint. The worst of the matter is that the problem is easily soluble by legislative change if indeed there is a legislative purpose to expand the areas in which group homes may be established.
*278 Accordingly, I vote to reverse the order of the Appellate Division and dismiss the petition.
Order modified, with costs to petitioner, in accordance with the opinion herein and, as so modified, affirmed.