Chief Judge Breitel
(dissenting). The Appellate Division held, quite correctly in my view, that the proposed group home does not qualify as a "family”, even as that term was liberally expanded in City of White Plains v Ferraioli (34 NY2d 300). The Appellate Division also held, however, that by enacting legislation authorizing group .homes the State had pre-empted the right of local governments to make zoning laws precluding group homes. That holding is erroneous and involves reasoning avoided as a ratio decidendi in the White Plains case.
The arrangement of the Port Washington facility does not meet the liberal minimal test stated in the White Plains case, that is, it is not "a group headed by a householder caring for a reasonable number of children as one would be likely to find in a biologically unitary family” (at p 306). I therefore respect *275 fully dissent and vote to reverse and dismiss the petition or, in the alternative, to convert the proceeding into an action and declare that the group home in this case is not a family for purposes of the town’s zoning ordinance.
The Port Washington facility was set up to house unadapted disturbed children, "far more disturbed than the average young person”, only until continuing psychiatric care enables the children to be reunited with their families. They are supervised by an alternating staff the members of which periodically return elsewhere. Extension of the definition of "family” to include the proposed group home misperceives the functional interpretation applied to "family” in the City of White Plains case and, as a result, undermines the salutary purpose of single-family zoned districts. Moreover, it distorts the definition of "family” in the ordinance, a distortion impermissible even under the guise of interpretation or construction.
It is of course no longer argued that only persons related by blood or formal adoption may constitute a family under the ordinance, if liberally interpreted as it should be. Thus, on this view, a family with foster children would not be barred from a single-family zoned district. It does not follow, however, that every group home authorized under section 374-c of the Social Services Law is a family for zoning purposes, the only category relevant. The household, to qualify under the ordinance, in every sense but a biological one must function as a stable, single-family unit, albeit occasionally changing in composition as even a private family might and does. (Semble, contra, Little Neck Community Assn. v Working Organization for Retarded Children, 52 AD2d 90, 94, mot for lv to app den 40 NY2d 803; Living Resources Corp. v Burns, 91 Misc 2d 919.)
Because the group home in the White Plains case was in "theory, size, appearance and structure” set up to resemble a traditional family unit, the character of the neighborhood would not be impaired. The home consisted of a resident married couple, their own resident two children, and ten foster children, seven of whom were siblings. There was no shifting about contemplated; "the intention [was] that they remain and develop ties in the community” (34 NY2d, at p 305).
In contrast, the proposed Port Washington home in key respects differs from a traditional family. Instead of one *276 married couple, two alternating sets of persons, not specified as to sex or marital status, are to be employed as "houseparents”, one set for weekdays and the other set for weekends and holidays. Nor does it appear that the children could be effectively integrated into the community, assuming, dubiously, that that was intended. The goal of the home, and that of the psychiatric treatment given, is that the youngsters be returned to their own parents as soon as possible. While staying at the Group House, the children would even visit and be visited by their natural parents. As opposed to a "relatively permanent” household, the framework of the Group House allows for, if it does not promote, the housing of transients. Indeed, the more successful the enterprise the greater the movement in and out of the home.
To hold that the instant home falls within the definition of "family” overstrains the acceptable reach of statutory interpretation and even construction. Inclusion of the proposed home under the term "family”, notwithstanding the alternating "houseparents” and the high potential for transient children, would involve precisely the overreaching kind of statutory interpretation required to hold, as did the Appellate Division in this case, that the State legislation authorizing group homes has pre-empted their exclusion by local zoning ordinances.
Even more problematic are the implications. If the instant home qualifies as a single-family unit, what of the residence intended to house children for two or three months and no longer. As a practical matter, the children in such a home would not likely be attending community schools or using community recreation facilities, as in some cases which have already arisen (see People v Saint Agatha Home for Children, Town Ct, Town of Pound Ridge, Sept. 26, 1977, Eichelburg, J., revd App Term, May 9, 1978). So, too, if this proposed group home is allowed, logically 5 or 10 more should be permissible in the same area. While any number of homes designed to conform practically with a community zoned for single-family homes should not be objectionable, a like number of homes resembling the Port Washington facility could, perhaps irreversibly, undermine the stability and tranquil atmosphere to which the majority opinion refers in discussing the Belle Terre case (Village of Belle Terre v Boraas, 416 US 1).
None of this is to cast doubt on the valuable purposes of the *277 proposed group home. The remedy, if there should be one, would be State legislation mandating acceptance of the facilities but including, undoubtedly, controls and restrictions to prevent the subversion of equally valuable single-family communities.
In sum, each group home involves, almost invariably, its own complex of facts (see, e.g., Little Neck Community Assn. v Working Organization for Retarded Children, 52 AD2d 90, supra; see, generally, What Constitutes A "Family” Within Meaning of Zoning Regulation or Restrictive Covenant, Ann., 71 ALR3d 693). A kind of line drawing, then, however difficult a process, is inevitable. Whether single-family unit treatment is appropriate in a particular case requires analysis and sensitivity to subtle distinctions. Ultimately, the question is whether in theory, size, appearance, and structure the home is set up to emulate a family. Neither the need for the kind of facility proposed nor the unquestioned motives of petitioners should obscure the transient character of the proposed Port Washington home and the ill effects it could have on the community, and especially so if multiplied in number. A house that is built like a home is not necessarily a home. A house with a shifting group of children in need of continuing psychiatric care, and with shifting sets of adults, potentially all unrelated to one another and regularly returning elsewhere, is not a home.
There is no doubt that in statutory interpretation and construction the courts may and do apply standards allowing the effectuation of the intent of the lawmaker. But there are finite limits, even if no sharp line, between interpretation which is permissible and that which is not. So, in the White Plains case (supra) the court looked to the purpose of the zoning ordinance and expanded its meaning, quite liberally, to accomplish the purpose, even though the interpretation went beyond the literal and even plain meaning of the zoning ordinance. It is quite another thing, by an evasive process, to stretch the liberal interpretation to still another and even more liberal application; and this could go on endlessly. Such a process is not sound judicially and does not accord with principles of judicial restraint. The worst of the matter is that the problem is easily soluble by legislative change if indeed there is a legislative purpose to expand the areas in which group homes may be established.
*278 Accordingly, I vote to reverse the order of the Appellate Division and dismiss the petition.
Judges Jones, Wachtler and Cooke concur with Judge Gabrielli; Chief Judge Breitel dissents and votes to reverse in a separate opinion in which Judges Jasen and Fuchsberg concur.
Order modified, with costs to petitioner, in accordance with the opinion herein and, as so modified, affirmed.