### STATE *v.* URGEL PAILLE.

348

*Raymond K. Perkins*, County Solicitor, for the State.

*Herbert W. Rainie*, for the defendant.

ALLEN, C. J. The case presents two independent issues under the State constitution. One relates to the legislative grant of authority to enact the ordinance. The other is whether free enterprise may be fettered in the manner the ordinance enacts.

I. The first issue is ordinarily regarded as a statutory one, in view of the statute (P. L., c. 54, s. 12, xiv) providing, in empowering city councils to make by-laws and regulations which "may seem for the well-being of the city", that "no by-law or ordinance shall be repugnant to the constitution or laws of the state". But without this provision the limitation of municipal power would be no less. It is superfluous for state legislation to declare that the Constitution may not be violated, and it is no less so to declare that ordinances must not conflict with state legislation. The framework and system of state government established by our constitution would obviously be attacked and undermined if municipalities were free to enact unpermitted legislation for their localized areas. Unauthorized local legislation adding to, detracting from, or otherwise affecting state legislation is not constitutionally valid. "In the nature of things, such [local] legislation must be not inconsistent with the laws of the state . . ." *State* v. *Noyes*, 30 N. H. 279, 293.

In *State* v. *Angelo*, 71 N. H. 224, an ordinance of Somersworth requiring peddlers to pay a monthly license fee was held invalid on two grounds. In respect to one it was said (*p.* 228): "By comparing the ordinance with . . . [the State legislation], it will be seen that the statute embraces the whole subject that is covered by the ordinance, and that the provisions of the one are inconsistent with those of the other. The statute applies to the whole state. There is nothing in it which shows or tends to show an intention on the part of the legislature to exempt any town from its operation under any circumstances".

Considering the ordinance under examination in the light of the foregoing test of validity, its prescription of a penalty for violation of the public health laws of the State and the State barber law is

peculiarly an abortive attempt to interfere with state legislation. The State barber act (Laws 1937, c. 163, s. 21) provides penalties for the violation of any of its requirements or of any rule or regulation made pursuant to it. The act applies to all cities and to certain towns. Defining the conditions for doing business, it permits the conduct of the business upon compliance with them. Imposing a penalty within fixed limits for violation of the conditions, it determines how severe the penalty may be. For a municipality to ordain that an additional penalty for a violation within its borders shall be imposed is in effect an attempt to amend the statute in local application. Two penalties for the same offense would be enforceable if the ordinance were to be sustained. A statute operating in all municipalities where it is in force with no difference by its terms in application to them would receive unequal effect. If a municipality might add to the severity of punishment, it would be as arguable that it might lessen it. The proposition is so absurd in its manifest disregard of the basic organization of the State government as to make further discussion needless.

The State act provides for shop registration. By it the State examining and licensing board is required to issue to certified operators a shop registration if the local board of health reports upon investigation that the shop is, "with respect to its location, appointments, equipment and appliances, suitable and sanitary" for its purposes. s. 16. The local board is required to enforce the act by inspections from time to time and by prosecution for its violations, with the general coöperation of the State board. s. 21.

As has already appeared, violation of any rule or regulation made under the act is a misdemeanor. The record does not disclose the State Board's rules and regulations, but so far as that board adopts those of local boards in local application, their violation is penalized by the statute. While local rules may not be the same in all places, the State Board's authority to adopt them is not to be denied for that reason. Varying local conditions may well justify special rules therefor.

In due construction of the statute, suitable and sanitary conditions are to be found by local boards under the tests of such rules and regulations as may be established by either the State or a local board, and the acceptance of a local board's findings implies the adoption of its rules and regulations by the State Board. The general intent of the statute is to vest in the State Board final regulatory power to secure suitable and sanitary conditions in barber shops, and the

implication that local rules specially relating to shops are to be regarded as a part of the body of state rules is fairly manifest. Regulation of "the practice of barbering" is the entitled statutory enactment, and the purpose of the statute to make full and complete provision therefor, with ultimate authority assigned to the State Board in respect to shop registrations, is to be found. General uniformity of proper conditions may be subject to qualifications to meet reasonable variations between different municipalities, and local rules in respect to conditions may therefore vary. To maintain the integrity of the State Board's authority its adoption of such rules is to be assumed.

Before the passage of the State act all local boards of health were required to promulgate certain specified regulations for the management of barber shops, the violation of the regulations or of any other regulation prescribed by such boards for barber shops as a health measure was made a misdemeanor, and such boards were under duty to make regular inspections of barber shops and prosecute violations of the regulations. P. L., c. 133, ss. 19-21. By the State act these provisions are not applicable in places where it is effective. Laws 1937, c. 163, s. 22. This distinction is further reason for the inference that the State act vests in the State Board final supervisory and directive authority in enforcement of the act.

Any local rule or regulation employed to aid in the determination of proper conditions for the grant of shop registration or specially relating to the conduct of a shop is accordingly held to be sanctioned by the State Board as an implied adoption of the rule for the special locality. It follows that the ordinance is invalid in its provision for a penalty for violation of such a local rule, for the same reason of invalidity in respect to a penalty for violation of a general rule of the State Board.

In respect to closing hours, the act, as already stated, is construed to provide in full for special regulation. It leaves open no field for local regulation of shops classified by themselves. The conduct of a shop may not be specially regulated by local authority on the ground of its special business of barbering, since the act was designed as an all-inclusive measure of regulation upon the subject as a particular business or occupation. In consequence, the ordinance assumes authority which the legislature has taken away. The loss of constitutional support for it must therefore be declared.

The inquiry upon the topic of delegated authority is not in strict exactness whether the Constitution has been violated, but whether the

ordinance may be upheld as passed upon a valid grant of authority. The mere fact of enactment of an ordinance presupposes no authority to enact, and the statutes under which the claim of authority is asserted are subject to no rule of construction requiring the claim to be sustained if it possibly may be. A municipality having no constitutional powers except as are expressly or impliedly granted by the legislature, the extent or character of a grant is to be determined by normal rules of statutory construction. What the legislature has authorized is not shown by what the municipality has done. Municipal conduct calls for no conclusion of authority for it by a rule stretching a statute to a strained meaning. No considerations of wisdom or policy are invoked. Authority, when issue of it is raised, must appear from its finding as a fair import of the statute. The State's "complete legislative control of local government" (*Amyot* v. *Caron*, 88 N. H. 394, 399) predicates a denial of local authority not shown to have been granted.

II. Upon the branch of the case relating to individual freedom, the broad issue is whether the provisions of the ordinance for closing hours can be sustained as a permitted exercise of the police power. The legal standards and tests are well established, and only their application is here involved. The wisdom and expediency of the ordinance are disregarded. The rule is observed that a legislative conclusion of the expediency of a measure is not subject to judicial review, but aside from expediency the character of the measure as conformable with the Constitution is thus subject.

The constitutional guaranty that "Every member of the community" shall be protected "in the enjoyment of his life, liberty, and property" (Const., Pt. I, *art.* 12) nullifies arbitrary legislation passed under the guise of the police power. If the legislation serves no useful purpose to advance the public welfare, it is void. Also it is void if the restriction of private right is oppressive while the public welfare is enhanced only in slight degree. *Dederick* v. *Smith*, 88 N. H. 63, 68, and cases cited.

The State has urged a number of propositions in support of its claim of a reasonable character of the requirement of closing hours.

One position it takes is that barber shops are sometimes dens of vice where crime and sin in various forms of evil are fostered and engendered, and more readily under cover of darkness. This ground of support is utterly without tenable merit. The complaint is that the defendant kept his shop open on a proscribed Wednesday afternoon, and that particular proscription has no imaginable efficiency

to purify an atmosphere murky with immorality. But without relying upon so narrow a point of unreasonable application, the claim of a frequent tendency of barber shops to breed vice has no factual support. Judicial notice is taken that they are free from such a stigma and have no characteristic inherence inducive and productive of iniquity. And there is no evidence, and hence no assumption, that conditions in Concord are so unusual and exceptional as to call for their special treatment. "The occupation of being a barber is an ancient and lawful business." *Opinion of the Justices*, (Mass.) 14 N. E. Rep. (2d.) 953, 954.

The public need of regulating the conduct of the business as the ordinance provides in the interest of law and order is at best slight. It is not fairly and reasonably appreciable. As to bad by-products, an occasion is of rare exception and not of frequency. The Constitution permits no excessive encroachment upon the private right. The private right is unduly invaded unless the ways and means of invasion are in some fair measure practical and adapted to secure the public interest. With acceptance of the rule that "The inclusion of a reasonable margin [of innocuousness] to insure effective enforcement will not put upon a law, otherwise valid, the stamp of invalidity" (*Euclid* v. *Company*, 272 U. S. 365, 388, 389), yet the ordinance is invalid if it "passes the bounds of reason and assumes the character of a merely arbitrary fiat." (*Purity Extract &c. Co.* v. *Lynch*, 226 U. S. 192, 204).

To impose upon an occupation a regulation designed to strike at a condition or practice maintained or pursued by only a few of those engaging in it gives but scant respect to the force and virtue of a right having constitutionally equal standing with the public right. Reasonableness demands that while a few may be sacrificed in order to reach many, many may not be enjoined in order to reach a few.

It is argued that upon the point of public morals the view here taken does not conform with the authority of *State* v. *Freeman*, 38 N. H. 426. There an ordinance of Dover requiring restaurants to be closed after ten o'clock at night was sustained. Restaurants were regarded as "places of public entertainment," and the ordinance was thought to be a measure promoting "the common convenience and safety." The court based its decision on the authority of *State* v. *Clark*, 28 N. H. 176, a case in which an ordinance prohibiting the using or keeping of intoxicants in any "refreshment saloon or restaurant" was held valid as being in the interest of "public policy or morals," and on the same standing as other laws "enacted from a

regard to the public peace and safety." The view was thus taken that restaurants and liquor saloons had common attributes. That is far from saying that barber shops also have the same attributes. In view of the extent of the police power over the use and sale of intoxicants the analogy between restaurants and liquor saloons does not seem readily acceptable. Moreover, whether to-day, taking into account the changes in the customs and ways of life from those of nearly a century ago, such an ordinance as was upheld in the Dover case could be thought to be a reasonable interference with personal liberty of action in advancing some proper object of the exercise of the police power, is so doubtful as to be, at least debatable. The need of curfew laws is not as great as it once was.

The State's contention that the provision for closing hours serves to promote the public health is equally unconvincing to show a sustaining support for it. It has no substantially appreciable relation to that subject. Exposure to sickness and disease from unrestricted hours of opening is not a reasonable assumption.

The view that inspection may be more difficult and inconvenient, if not impossible, if a barber shop is open at night as well as in the daytime (*Falco* v. *Atlantic City*, 99 N. J. L. 19) cannot in good sense be adopted. Daytime inspections being available, they are unaffected by carrying on the business at night. The inadequacy of night inspections is a fanciful claim. If natural light may be a better aid to inspection than artificial light, the difference is not so great that it can fairly be said that a night inspection is unduly inefficient in comparison with one by day. Barber shops as a rule are well lighted at all times of business. And open hours at night have no apparent tendency to add to the difficulty or to subtract from the efficiency of daytime inspection. The point of difficulty of inspection at night is further weakened by the permission of the ordinance for some hours of open shop after daylight. The argument that a barber is likely to disregard sanitary requirements when a visit of inspection is not expected likewise has no reliable force. If a shop is open at night, it is subject to night inspection. No logic is perceived in the proposition that an expectation that no night inspections will be made justifies an order forbidding open hours at night. The statute (Laws 1937, *c.* 163, *s.* 21) requires at least four inspections a year. It is a legislative judgment of minimum sufficiency without regard to closing hours.

On the point that the provision for closing hours is a health measure as a sort of prescription for hours of labor, assuming that a city has

power to enact an hours of labor ordinance for employment within its limits, no reasonable correlation exists. In the application of the ordinance to employes, it does not limit their service to the weekly schedule of fifty-nine hours which it establishes, since employment during closing hours may be added, in cleaning a shop and its appointments after the business of the day is finished and in preparation for the business of the following day. "The proposed bill does not in terms shorten the hours of labor of barbers. It does not purport to do that. It merely limits the hours during which barber shops may be kept open. By hiring more barbers, the hours of the individual barber could even be shortened without violating the terms of the proposed bill." *Opinion of the Justices,* (Mass.) 14 N. E. Rep. (2d.) 953, 954. ". . . the statute . . . cannot properly be regarded as one to fix hours of labor. It is by its terms specifically directed solely at regulating the opening and closing of barber shops. Therefore, cases dealing with statutes fixing hours of labor are not assistance . . . ." *Amitrano* v. *Barbaro,* 61 R. I. 424. "If a shop remained open twenty hours of the day, working two shifts of ten hours each, or kept open twenty-four hours of the day, working . . . four shifts of six hours each, there would be no violation of any regulation as to the *hours* of labor." *Patton* v. *Bellingham,* 179 Wash. 566; (98 A. L. R. 1076, 1082).

In respect to a proprietor of a shop, the requirement as an hours of labor measure is even more indefensible. In curtailing his time for working and doing business it interferes with his right to earn a living. The State advances the remarkable theory that this is proper because long hours, exhausting his physical and mental energies, will lessen his attention to sanitary safeguards for his customers and will disturb his own well-being. If a glimmer of causative connection between the premise and the conclusion may be logically inferred, the menace to public health is negligible while the restriction of private right is severe. The conception confuses public and private health. What one may do in taking care of himself is his own affair. Any interest of the public that the individual should attend to his health is controlled, in action pursuant to the interest, by the guaranty of personal liberty. The public right to protect public health is not so extensive and far reaching that it may adopt measures of unlimited and unchecked regulation of all conduct of an individual affecting his health. It may require conduct and practices designed to protect the public health in some reasonable scope of protection, but only in due recognition of one's right to live his own life without some real

prejudice to the rights of others in their collective or individual aspect. A different order of government would be necessary if one's ways and habits of life were to be subject to unrestrained public command.

The principle that "it is one of the fundamental rights and privileges of every American citizen to adopt and follow such lawful industrial pursuit, not injurious to the community, as he may see fit" (*People* v. *Marx*, 99 N. Y. 377, 386) is elementary, and no less so is its corollary that he may engage in the pursuit in any manner which likewise and in appreciable measure is not harmful to the public. A purpose, if any in fact existed, to protect the public health is not in any observable degree effectuated by the ordinance in its provision for closing hours as a means therefor. Adaptation of the means prescribed to a proper end can be found only in disregard of common sense and practical logic. The "right to pursue any proper vocation to obtain a livelihood" (*Opinion of the Justices*, (Mass.) 14 N. E. Rep. (2d.) 953, 954) and the right to conduct it in a manner not endangering the public safety, health and morals would be substantially bereft of their vitality if the contentions of the State were given acceptance.

In respect to closing hours the ordinance in necessary effect is a substantial and serious restriction upon the play of competition. While unfair competition may be enjoined, all competition may not be regulated merely because of a purpose to control it. Fairness of competitive conditions and conduct may be sought to be attained by police measures, but not their equality. The right to conduct a business connotes the economic right to compete, and a common level of conditions, methods and practices may not be justifiably ordered for a purpose to stifle or eliminate competition. In and of itself competition cannot constitutionally be held unfair, or prohibited.

". . . the ordinance bears no real or substantial relation to the reasonable protection of the public. It belongs, rather, in the category of unreasonable restrictions upon the right of a citizen to engage in a useful and lawful calling and to acquire and possess property and to so use it as will not interfere with the rights of others. The ordinance seeks not merely to regulate a business, but to dictate its operation . . . . If the principle thus contended for be upheld, then the city council could limit the opening and closing hours of shops to any period that it saw fit, with the view of equalizing the incomes of all." *Patton* v. *Bellingham, supra.*

". . . the constitutionality of a statute is to be decided by an examination of its real purpose and its actual effect." *Opinion of the*

*Justices,* 87 N. H. 496, 497. If it could be held that the title of the ordinance attests and certifies its purpose, its operation does not effectuate the purpose. It arranges for a weekly half-holiday and daily hours of business solely as matters of private convenience and comfort. The zoning provisions of the ordinance in making slight changes of hours for different parts of the city strikingly illustrate this operative effect.

The conclusions reached render it unnecessary to pass upon the validity of the provision for closing hours from the standpoint of discrimination, but it may be noted that the exemption in the ordinance of "hair dressing establishments serving female customers exclusively" presents an issue of such nature. It is said in *Opinion of the Justices,* (Mass.) 14 N. E. Rep. (2d) 953, 954: "The proposed bill . . . does not apply to hair dressers . . . nor does it relate to beauty parlors . . . where women resort for cutting the hair and other treatment of the scalp and face. It has been held, since the acts performed on customers of barber shops and beauty shops are very similar in their nature, that such an omission renders unconstitutional a statute because of discrimination between persons belonging to the same class. *Ernesti* v. *Grand Island,* 125 Neb. 688." More broadly, if keepers of beauty shops were included, the objection that employers in other kinds of business were unduly favored would have arguable merit. Discrimination against one class of employers operating to the advantage of others might be held an arbitrary classification. There may be as much and as good reason to require weekly half-holidays and freedom from work during certain hours to be given other classes of employes as obtains for those of barber shops.

No other grounds of public welfare than those herein considered have been urged by the State, or are believed to exist. The conclusion of invalidity is supported by a great preponderance of authority from other jurisdictions where the same or substantially same issues have been examined and decided. It is not one of strict and narrow construction. The constitutional guaranties stand in equal strength and force with the police power. They are not subordinate to it. The adjustment between them is not of preferential order, but is fixed by impartial reasonableness. "The limitations upon legislative power are for the general welfare and so long as they remain in force, legislation disregarding them is adverse to the public interest." *Goodrich Falls &c. Co.* v. *Howard,* 86 N. H. 512, 521. The constitution was designed to protect and preserve the "common right," considered in *Opinion of the Justices,* 4 N. H. 565, 566, and mentioned

in *Opinion of the Justices*, 82 N. H. 561, 563. In summary, proprietors of barber shops enjoy this right under our Constitution. The ordinance seeks to deprive them of it, and the customary adjectives arbitrary and oppressive are fittingly descriptive of the ordinance. It enters a field suggestive of unbounded authority. The compulsion is too drastic. No more than a case of private convenience is shown, and that is not enough.

The conformity of the ordinance with the Federal Constitution needs no decision.

*Complaint quashed.*

All concurred.