Portsmouth District Court
No. 7730

## THE STATE OF NEW HAMPSHIRE

v.

## RICHARD HUTCHINS
## ROBERT BINNETTE
## ARTHUR COLBY

November 16, 1977

*Peter J. Loughlin,* city solicitor, by brief and orally for the city of Portsmouth.

*Casassa, Mulherrin & Ryan,* of Hampton, and *David A. Riggs* (*Mr. Riggs* orally), for the defendants.

DOUGLAS, J.   The issue before us is whether the city of Portsmouth has jurisdiction to enact an ordinance that restricts the routes over which propane hauling vehicles may be operated within the city limits of Portsmouth, but outside the "compact zone" as determined by the commissioner of public works and highways. We find that this regulation has not been preempted by the state and that the city of Portsmouth has acted within its statutory authority to regulate the transportation of hazardous materials inside city limits.

The defendants are employees of Northeast Cartage Company, Inc., a New Hampshire corporation. They were charged with violating Portsmouth's hazardous materials ordinance, Portsmouth Rev. Ordinances ch. 7, art. 8 (1975), which restricts passage of any "motor vehicle . . . designed to transport 4,000 or more gallons of liquified petroleum gas or liquified natural gas and [containing] liquified petroleum gas or liquified natural gas or the vapor fumes of either" to certain designated routes. The complaints brought by the city alleged that the defendants were operating propane trucks on Route 1 in Portsmouth, which is not one of the desig-

nated routes. The arrests were made on a portion of Route 1, a Class 1 highway, which is within the city limits but lies outside the compact zone. Defendants challenged the city's jurisdiction to enact the ordinance; the question was transferred without ruling by the Portsmouth District Court (*Taylor, J.*).

The General Court has given the commissioner of public works and highways the authority to regulate "the use of Class 1 highways in . . . cities outside the compact portions thereof as determined by him." RSA 249:5 (Supp. 1975). Were the commissioner to promulgate regulations under the grant, any conflicting municipal ordinance would be voided, RSA 47:17 XV (Supp. 1975); *see State v. Boisvert,* 117 N.H. 291, 371 A.2d 1182 (1977) (per curiam); *State v. Jenkins,* 102 N.H. 545, 162 A.2d 613 (1960); *State v. Paille,* 90 N.H. 347, 9 A.2d 663 (1939). But he has yet to exercise his authority in this situation. Consequently any city ordinance not inconsistent with state statutes may stand unless the legislature has clearly manifested an intent to preempt the field of highway regulation. 6 E. McQuillin, Municipal Corporations § 21.34, at 269 (3d ed. 1969); *see, e.g., Keene v. Gerry's Cash Mkt., Inc.,* 113 N.H. 165, 168, 304 A.2d 873, 875–76 (1973); *Davy v. Dover,* 111 N.H. 1, 4, 273 A.2d 849, 851 (1971).

We find no such intent. RSA 249:5 specifically provides that the commissioner "may" regulate highways. Although the word "shall" would not necessarily denote preemption, its absence is evidence that the General Court did not intend to delegate exclusive power over highways to him. Furthermore, the legislature has specifically empowered municipalities to regulate the use of vehicles on particular highways within their limits, which includes the power to "exclude such vehicles altogether from certain ways . . . ." RSA 47:17 VIII. The city also may regulate the conveying of dangerous materials. RSA 47:17 IX.

We conclude that in the absence of positive regulation by the commissioner of public works and highways, the city of Portsmouth was free to enact reasonable ordinances regulating the transportation of hazardous materials within the city limits.

*Remanded.*

LAMPRON, J., did not participate in the decision of this case; the others concurred.