Hillsborough
No. 79-322

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

v.

TOWN OF HAMPTON & a.

January 31, 1980

*Sulloway, Hollis & Soden,* of Concord (*Dorothy M. Bickford* and *Martin L. Gross* orally), for the plaintiff.

*Upton, Sanders & Upton,* of Concord (*Richard F. Upton* orally), for the defendants.

PER CURIAM. The issue we decide in this interlocutory transfer is whether the defendant towns may require the plaintiff to use underground transmission lines after the public utilities commission has issued to the plaintiff a certificate of site and facility authorizing above-ground transmission lines for the Seabrook Nuclear Electric Generating Station, in compliance with RSA ch. 162-F. We hold that the towns lack power to require underground transmission lines.

In this petition for declaratory judgment and injunctive relief brought by the Public Service Company of New Hampshire against the town of Hampton and other towns, the plaintiff seeks an order declaring void, as applied to it, certain votes of the towns purporting to require underground construction of electric transmission lines above a rated capacity of 69 kilovolts. The Seabrook transmission lines have a rated capacity of 345 kilovolts. The Court (*Goode*, J.) transferred, without ruling, the following questions of law in advance of trial:

> 1. Do the votes purportedly adopted by the defendant towns endowing them with any legal authority to interfere with the construction of overhead transmission lines associated with the Seabrook Project, in light of RSA 162-F, the Certificate and the other permits held by the plaintiff?
> 2. Do the votes purportedly adopted by the defendant towns endowing them with any legal authority to interfere with the construction of overhead transmission lines by the plaintiff in connection with the Seabrook Project, in light of the requirements of the Zoning Enabling Act (RSA 31:60 *et seq.*) or other provisions of law relating to actions taken by Town Meetings?

The plaintiff holds a certificate of "site and facility" authorizing the construction of the Seabrook Nuclear Power Plant and the necessary transmission lines. This certificate, issued by the public utilities commission (PUC) on January 29, 1974, after compliance with RSA ch. 162-F, specifically authorizes the erection of overhead transmission lines within the boundaries of the defendant towns. Incorporated into the certificate are permits issued by the water resources board and by the department of public works and highways authorizing the erection of overhead transmission lines within the defendant towns.

The plaintiff also holds a construction permit from the United States Nuclear Regulatory Commission authorizing the construction of the Seabrook Nuclear Station with associated overhead transmission lines within the defendant towns. The plaintiff claims to have already invested over two million dollars in preparing for the

construction of overhead lines in accordance with the certificate and permits.

In March 1979, the defendant towns voted to adopt certain ordinances requiring all electric transmission lines over 69,000 volts to be buried underground. The plaintiff's lines have a capacity much in excess of this voltage.

Enacted in 1971, the declared purpose of RSA ch. 162-F is to provide a resolution, in an "integrated fashion," of all issues involving the selection of sites and routing of associated transmission lines. RSA 162-F:1. It establishes a site evaluation committee composed of certain officials from specified State agencies. RSA 162-F:3. The committee is required to review all plans for the siting and construction of bulk power plants and the routing of transmission lines as defined in the statute. The statute requires joint public hearings to be held by the committee, the PUC and such other agencies as have jurisdiction over the subject matter. The initial hearing and every fourth hearing thereafter must be held in the county where the facility is to be located. RSA 162-F:7 I. It provides that no additional application shall be required to satisfy the requirements of individual agencies and departments. RSA 162-F:7 IV. The committee is required to give due consideration to the views of municipal and regional planning commissions and municipal legislative bodies in determining the effect of such a project on esthetics, historic sites, air and water quality, the natural environment and the public health and safety. RSA 162-F:8 I. It is provided that the findings of the committee shall be conclusive on all questions of siting, land use, air and water quality. RSA 162-F:8 II.

In the instant case, the site evaluation committee followed all the procedural and substantive requirements of RSA ch. 162-F. After thirty-two days of hearings lasting almost a year, the committee approved the plaintiff's application for a certificate of site and facility on July 27, 1973. During the hearings, the committee considered both overhead and underground transmission lines and heard evidence regarding both methods. In its report, the committee approved overhead lines over specific routes. Incorporating the report of the committee, the PUC issued a "certificate of site and facility" on January 29, 1974. After rehearings were denied, an appeal was brought to this court. On April 23, 1975, we upheld the decision of the committee. *Society for Protection of N.H. Forests v. Site Evaluation Commission*, 115 N.H. 163, 337 A.2d 778 (1975).

A fair reading of RSA ch. 162-F reveals a legislative intent to achieve comprehensive review of power plants and facilities site selection. The statutory scheme envisions that all interests be

considered and all regulatory agencies combine for the twin purposes of avoiding undue delay and resolving all issues "in an integrated fashion." By specifically requiring consideration of the views of municipal planning commissions and legislative bodies, the legislature assured that their concerns would be considered in the comprehensive site evaluation. Thus, the committee protects the "public health and safety" of the residents of the various towns with respect to the siting of power plants and transmission lines falling under the statute.

■ ■ We regard it as inconceivable that the legislature, after setting up elaborate procedures and requiring consideration of every imaginable interest, intended to leave the regulation of transmission lines siting to the whim of individual towns. Towns are merely subdivisions of the State and have only such powers as are expressly or impliedly granted to them by the legislature. *Lavallee v. Britt*, 118 N.H. 131, 383 A.2d 709 (1978); *City of Dover v. Wentworth-Douglas Hospital Trustees*, 114 N.H. 123, 316 A.2d 183 (1974). Whatever power towns may have to regulate the location of transmission lines within their borders, that power cannot be exercised in a way that is inconsistent with State law. *Lavallee v. Britt, supra; see State v. Hutchins*, 117 N.H. 924, 380 A.2d 257 (1977).

■ ■ Local regulation is repugnant to State law when it expressly contradicts a statute or is contrary to the legislative intent that underlies a statutory scheme. *State v. Driscoll*, 118 N.H. 222, 385 A.2d 218 (1978); *State v. Boisvert*, 117 N.H. 291, 371 A.2d 1182 (1977). The action by the defendant towns in this case is repugnant to RSA ch. 162-F because it is contrary to the legislative intent that all matters regarding the construction of bulk power plants and transmission lines covered by the statute be determined in one integrated and coordinated procedure by the site evaluation committee, whose findings are conclusive. *See State v. Boisvert supra* at 292, 371 A.2d at 1183. By enacting RSA ch. 162-F, the legislature has preempted any power that the defendant towns might have had with respect to transmission lines embraced by the statute, and the actions by the defendant towns with regard to transmission lines are of no effect. *Id.; see State v. Hutchins*, 117 N.H. 924, 380 A.2d 257 (1977).

The defendant towns argue that the transmission lines in question are not covered by the statute. RSA 162-F:2, entitled "Definitions," provides:

I. "Bulk power supply facilities" means:

(a) Electric generating station equipment and associated facilities designed for or capable of operation at a capacity of 50 megawatts or more;

   (b) An electric transmission line of a design rating of 100 kilovolts or more, associated with a generating facility outlined in (a), *over a route not already occupied by a transmission line or lines;*
   (c) An electric transmission line of a design rating in excess of 100 kilovolts that is in excess of 10 miles in length over a route not already occupied by a transmission line *or electric transmission lines of a design rating in excess of 100 kilovolts which the site evaluation committee or commission determines should require a certificate because of a substantial environmental impact.*

(Emphasis added.) Relying on paragraph (b), the towns argue that the committee has no jurisdiction over the lines in question because they do not run entirely over routes not already occupied by transmission lines. The record shows, however, that one line, 28.75 miles long, is located along over 17 miles of new route while a second, 7.25 miles long, is located entirely over a new route. The third line, 18 miles long, runs 8.5 miles over a new route and 9.5 miles over an existing route.

   ■   We believe that these routes fall within the definition of "[b]ulk power supply facilities" contained in RSA 162-F:2 I(b), and are, thus, within the committee's jurisdiction. In each case, the transmission lines are of a design rating in excess of the statutory minimum and run substantially "over a route not already occupied by a transmission line or lines . . . ." *Id.* We decline to read into the statutory language a requirement that the routes be *entirely* new.

   ■   Moreover, it would appear that the committee possesses jurisdiction over these transmission lines by virtue of the italicized language contained in RSA 162-F:2 I(c). Where the statutory benchmark of design rating is met, issuance of the necessary site permit implies, *ipso facto,* a finding by the committee of "a substantial environmental impact."
   Accordingly, we hold that the lines here in question are within the jurisdiction of the committee and cannot be regulated by the town. Our view is buttressed by the fact that in its original proposal for the Seabrook transmission lines, the plaintiff desired to locate a much greater proportion of the lines over new routes. Only after consultation with the defendant towns and the committee did the plaintiff agree to locate a greater portion of the lines over routes already occupied by transmission equipment. That decision, motivated in part to satisfy the affected towns, should not later be used to divest the committee of site review authority.

In view of our answer to the first question, we need not answer the second.

*Remanded.*