Rockingham
No. 80-382

REGION 10 CLIENT MANAGEMENT, INC.

v.

TOWN OF HAMPSTEAD

December 26, 1980

*Kearns & Colliander*, of Exeter (*Peter F. Kearns* orally), for the plaintiff.

*Holland, Donovan, Beckett & Welch*, of Exeter (*Steven G. Hermans* orally), for the defendant.

*Gregory H. Smith*, acting attorney general (*Wilbur A. Glahn, III*, assistant attorney general, on the brief), by brief for amicus curiae, the State of New Hampshire.

*John D. MacIntosh*, of Concord, and *Alan J. Cronheim*, of Portsmouth, by brief for amici curiae, Janet Smith, Tom Vaillancourt, and the New Hampshire Association for Retarded Citizens.

DOUGLAS, J. In this case the court determines what constitutes a family and whether the Town of Hampstead may prevent the

State from locating a residence for developmentally-impaired persons within that town without obtaining town approval.

In 1975 the New Hampshire legislature enacted laws relating to the placement of retarded or developmentally-impaired persons so as to develop a comprehensive program including "community residences." The New Hampshire Division of Mental Health was to develop a State service delivery system to include, but no longer to be composed solely of, the Laconia State School and Training Center. *See* RSA 171-A:2 XVI (Supp. 1979). The State delivery system was described as follows:

> "The division shall maintain a state service delivery system, comprised of a substantial number of programs and services, including Laconia state school and training center, for the care, habilitation, rehabilitation, treatment and training of developmentally impaired persons. Such service delivery system shall be under the supervision of the director."

RSA 171-A:4 (Supp. 1979).

Placements into the different area agencies are to be based on geographical regions as established by rules of the Division of Mental Health. RSA 171-A:6 I (Supp. 1979). Residential placement is clearly contemplated, with periodic review under the supervision of State officials and comprehensive guarantees of the rights of the retarded. *See* RSA 171-A:9 to 17. The purpose of the legislation was to de-institutionalize some of the patients at the Laconia State School by use of "community residences" located throughout the State as part of a plan entitled "Action for Independence." Pursuant to federal legislation, funding was obtained from the United States Department of Housing and Urban Development to locate residences throughout the State. According to the brief filed by the State of New Hampshire, two homes such as the one at issue in this case have become operational, while four others are in the development stage. The Division of Mental Health has also developed twelve group homes, seven apartments and many specialized home care facilities for the retarded.

The plaintiff in this action is a non-profit New Hampshire corporation funded by government sources and designated by the Director of the Division of Mental Health to provide services for the retarded from eleven towns in the southeast portion of Rockingham County. The plaintiff wishes to construct a ranch style, single story building, containing eight bedrooms, four bathrooms, one kitchen, one living room and one den, on land

located in the town of Hampstead. It is contemplated that eight developmentally-impaired or physically-disabled adults, as well as two staff members, will reside in the dwelling.

On January 28, 1980, the defendant advised the plaintiff that its proposed use of the land would be qualified as a "multiple unit development" under the Hampstead zoning ordinance and therefore would have to be submitted to the voters of the town at a town meeting pursuant to Article X of the ordinance. The plaintiff asserted that it was a permissible use as a "single family dwelling" and that Article X did not apply. The plaintiff filed a petition for declaratory judgment against the town on July 31, 1980, and on August 25, 1980, the Master (*Charles F. Tucker*, Esq.) recommended that the plaintiff's proposal be declared a permissible use. The master's report was approved by *Mullavey*, J., and then on September 9, 1980, the town voted to disapprove Region 10's proposal. On September 23, 1980, Hampstead appealed to this court.

The master, in a thorough sixteen-page report, concluded that the "home" to be constructed was not going to be for more than two families because for all practical purposes the residents constituted a single family. We note that the dictionary as well as case law contains many possible definitions of the word "family." *See* Annot., 71 A.L.R.3d 693 (1976). Many courts have held that group homes constitute a family. *See, e.g., Hessling v. City of Broomfield,* 563 P.2d 12 (Colo. 1977); *YWCA v. Bd. of Adj. Summit,* 134 N.J. Super. 384, 341 A.2d 356 (1975).

■ ■ While we concede that group homes or other shared living arrangements may be called many things, we conclude that the word "family" should retain its historical and traditional definition of persons living together related by blood, marriage or adoption. While a town may wish to define the term for purposes of construing its own zoning ordinance, Hampstead has not chosen to do so. In the case of *Durham v. White Enterprises, Inc.,* 115 N.H. 645, 348 A.2d 706 (1975), this court considered a Town of Durham zoning ordinance that specifically defined the word "family" as "[o]ne or more persons living together in a dwelling as a single non-profit housekeeping unit . . . ." The issue in *Durham* was the construction of Durham's definition of family and not a determination of what the term means at common law when not otherwise specifically defined. *See Adams v. Hospital,* 82 N.H. 260, 132 A. 525 (1926); *Golden Cross v. Donaghey,* 75 N.H. 197, 72 A. 419 (1909). We conclude that the master erred in giving such a broad definition to Hampstead's undefined use of the word family.

■ We do, however, uphold for a different reason. As was noted earlier in this opinion, there is extensive State involvement and control of projects by non-profit entities such as Region 10. While it is obvious that New Hampshire has a long tradition of local home rule, plenary authority exists within the legislature to override local control when necessary for the greater good. *See Public Service Company v. Town of Hampton*, 120 N.H. 68, 411 A.2d 164 (1980).

In a recent decision this Court was faced with a question of whether a City of Portsmouth zoning ordinance could be applied to a private corporation that was a lessee of the State and operated the State pier under the control of the State Port Authority. We noted in that case, *City of Portsmouth v. John T. Clark & Son, Inc.*, 117 N.H. 797, 378 A.2d 1383 (1977), that zoning restrictions do not apply to the State or its agencies "unless the legislature has clearly manifested an intent that they shall." *Id.* at 798, 378 A.2d at 1384.

> "The New Hampshire State Port Authority is an agency of the state created by RSA ch. 271-A to perform certain legitimate state functions as set forth by statute. The functions performed by the defendant Clark & Son fall clearly within the scope of the port authority's mandate. The fact that Clark & Son is a private corporation does not alter the fact that the functions it performs are state functions. The lease arrangement is simply the method the port authority chose to perform some of its functions and this method is clearly authorized by RSA 271-A:3 IV (Supp. 1975)."

*Id.* at 798–799, 378 A.2d at 1384–85.

■ We find that the statutory scheme of placing developmentally-impaired persons in various locations throughout the State carries out a State policy that cannot be frustrated by local zoning restrictions. *See State v. Driscoll*, 118 N.H. 222, 385 A.2d 218 (1978) (local noise ordinance pre-empted by RSA 151-B); *State v. Hutchins*, 117 N.H. 924, 380 A.2d 257 (1977) (hazardous materials ordinances may be pre-empted by RSA 249:5). The State may wish to be cooperative with local municipalities by consulting with them so that proper planning for town services such as transportation and fire protection may occur.

*Judgment for the plaintiff.*

All concurred.