Carroll
No. 81-026

# Northern New Hampshire Mental Health Housing, Inc.

### v.

## Town of Conway & a.

September 16, 1981

*Dickson, Fauver & Cooper*, of North Conway (*Robert B. Dickson & a.* on the brief and *Randall F. Cooper* orally), for the plaintiff.

*Hastings & Son P.A.*, of Fryeburg, Maine (*Peter G. Hastings* on the brief and orally), for the defendants.

*William D. Paine, II*, of North Conway (*William D. Paine, II, & a.* on the brief and *Mr. Paine* orally), for the intervenors Bernard Hunter and William D. Paine, II.

*Gregory H. Smith*, attorney general (*Anne R. Clarke & a.*, assistant attorneys general, on the brief and *Ms. Clarke* orally), for the State as amicus curiae.

PER CURIAM. Recently, this court held that RSA ch. 171-A's "scheme of placing developmentally-impaired persons in various locations throughout the State carries out a State policy that cannot be frustrated by local zoning restrictions." *Region 10 Client Mgt., Inc. v. Town of Hampstead*, 120 N.H. 885, 888, 424 A.2d 207, 209 (1980). In this case, we are asked whether that decision controls the attempted location of a community living facility for the chronically mentally ill in a residential neighborhood over local objections that the facility would violate a town zoning ordinance. We hold that it does.

The plaintiff, Northern New Hampshire Mental Health Housing, Inc. (Housing, Inc.) is a non-profit corporation created by a community health center, RSA ch. 126-B, as a separate entity to receive federal funding to aid in the establishment of a community living facility for the chronically mentally ill. In September of 1979, the federal Department of Housing and Urban Development accepted Housing, Inc. into its demonstration program for the deinstitutionalization of the chronically mentally ill, reserving funds for the construction of a single-facility group home containing ten units for clients and one for resident assistants. On March 3, 1980, Housing, Inc. entered into a contract with the New Hampshire Division of Mental Health and Developmental Services to develop a community living facility in northern New Hampshire pursuant to RSA 126-A:39-:42-c (Supp. 1979).

Housing, Inc. found a desirable site for the facility in North Conway, and on March 24, 1980, signed an option to purchase the

property. The parcel, however, is zoned residential/agricultural, which limits land use to

> "a one or two family residential structure with or without home occupations, including professional office, owner occupied tourist home or lodging house or boarding house or rooming house, apartments, mobile homes, condominiums, churches, agricultural uses, including timber removal. Municipal services are permitted provided they are not offensive to the character of the neighborhood."

Town of Conway Zoning Ordinance.

On June 4, 1980, Housing, Inc. filed with the town board of selectmen an application for a zoning permit or change of use to operate a lodging facility for the mentally ill. The selectmen denied the application on the ground that the change in use was not permitted under the zoning ordinance. Housing, Inc. appealed that decision unsuccessfully to the town zoning board of adjustment and to the Carroll County Superior Court.

The superior court issued its decree denying Housing, Inc. relief on December 1, 1980, and on December 26, 1980, this court rendered its decision in *Region 10 Client Mgt., Inc. v. Town of Hampstead*, 120 N.H. 885, 424 A.2d 207 (1980). *Region 10* involved a factually similar situation in which a state-funded non-profit corporation sought to establish, pursuant to RSA ch. 171-A, a residence for developmentally impaired persons over local objection that the facility would violate the town zoning ordinance. We found that the State scheme for creation of the facility preempted local zoning restrictions. *Region 10 Client Mgt., Inc. v. Town of Hampstead*, 120 N.H. at 888, 424 A.2d at 209. Accordingly, Housing, Inc. filed a motion for rehearing on the ground that *Region 10* was dispositive of the case. On January 8, 1981, the Master (*Frank B. Clancy*, Esq.) recommended that the motion be denied. The following day, the Superior Court (*Temple*, J.) issued a decree in accordance with that recommendation. Housing, Inc. appeals.

■ The defendant Town of Conway and the intervenors, abutting landowners to the proposed residence, seek to distinguish *Region 10* on the ground that the State policy and treatment of the mentally ill and the developmentally impaired are substantially different. That argument is based in large part on the fact that the statutes dealing with the developmentally impaired, RSA ch. 171-A, are separate from those dealing with the mentally ill, RSA ch. 135-B. True as that may be, the provisions of both chapters are

similar in many respects, including treatment and service guarantees, *compare* RSA 135-B:43 *with* RSA 171-A:13 (Supp. 1979), rights of clients and patients, *compare* RSA 135-B:42, :45 and :46 *with* RSA 171-A:14 and :15, and procedures for placement in community programs, *compare* RSA 135-B:44–:48 *with* RSA 171-A:6 and :11. In fact, the statutory source of the program for the development of community living facilities involved in both this and the *Region 10* case is the same. RSA 126-A:39 (Supp. 1979) provides that the director of the division of mental health and developmental services (the director) "shall develop a statewide program of community living facilities for *developmentally impaired* and *mentally ill* persons." (Emphasis added.) In short, the statutory policy for placement of the mentally ill and the developmentally impaired in community living facilities is not substantially different but is the same.

In attempting to establish a community residence for the mentally ill, Housing, Inc. was carrying out an important State policy established by RSA 126-A:39 (Supp. 1979). The application of the Conway zoning ordinance to Housing, Inc. would frustrate that purpose by precluding the location of the facility in a predominantly residential area. In *Region 10* we reiterated the rule that local zoning ordinances are inapplicable to an entity specifically carrying out a State function, unless the legislature has clearly manifested an intent that they apply. *Region 10 Client Mgt., Inc. v. Town of Hampstead*, 120 N.H. at 888, 424 A.2d at 209. The defendants and intervenors argue that the legislature has manifested such an intent in RSA 126-A:40 (Supp. 1979), which provides that the director *may* withdraw certification of community living facilities if "at any time he has reasonable cause to believe that there exist violations of federal, state or local law. . . ." We do not think a statute giving the director discretion to withdraw certification upon finding of a violation of local law, such as a health or safety code, constitutes a clear mandate to apply local law to community living facilities in all cases.

For similar reasons, we reject the defendants' and intervenors' boot-strapping argument that because Housing, Inc.'s contract with the State requires compliance with applicable local law, local zoning ordinances apply. As we have noted above, zoning ordinances are invalid to the extent they prohibit location of a State community living facility in a particular community. *See Mongony v. Bevilacqua*, 432 A.2d 661 (R.I. 1981). Applicable local law, within the meaning of Housing, Inc.'s contract, means health

and safety codes that regulate the manner in which a facility is constructed but do not ban construction entirely.

 Although the defendants and intervenors have valiantly attempted to distinguish *Region 10* from this case, they have failed to do so. The statutory scheme for placement of mentally ill persons in community living facilities is the same as that for placement of the developmentally impaired. RSA 126-A:39 (Supp. 1979). Because the legislature has not expressly provided that local zoning ordinances will apply to the location of those facilities, the Town of Conway zoning ordinance does not apply.

We remind the State that it should first seek an accommodation with local authorities to develop compatible plans that both can live with. *See Region 10 Client Mgt., Inc. v. Town of Hampstead, supra* at 888, 424 A.2d at 209 (1980).

*Reversed.*

BATCHELDER, J., did not sit.