## No. 27128

Roy R. Hessling, Betty A. Hessling, Albert L. Moon, Anna K. Moon, John E. Walburn, Delores I. Walburn, Gary W. Ryan and Joanne L. Ryan v. The City of Broomfield; The City Council of the City of Broomfield; The Planning and Zoning Commission for the City of Broomfield; Walter P. Spader, individually and as a City Councilperson; Robert E. Williams, individually and as a City Councilperson; Thelma Banschbach, individually and as a City Councilperson; Lewis M. Burrows, individually and as a City Councilperson; Paul Cuin, individually and as a City Councilperson; David G. Jackson, individually and as a City Councilperson; John P. Nanney, III, individually and as a City Councilperson; Nancy Fairchild, individually and as a City Councilperson; Norman A. Smith, individually and as a City Councilperson; Don Miller, individually and as a City Councilperson; American Builders, Inc; Pulte Home Corporation; The Boulder County Board for Developmental Disabilities; Boulder County Board of Mental Retardation; and Tina Marie Homes, Inc.

(563 P.2d 12)

Decided April 25, 1977.

John A. Kintzele, for plaintiffs-appellants.

Steven L. Zimmerman; Martin, Knapple, and Johnson, for defendant-appellee Boulder County Board for Developmental Disabilities.

Tallmadge, Tallmadge, Wallace & Hahn, David Hahn, for defendants-appellees City of Broomfield and Members of the City Council of the City of Broomfield.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The plaintiffs sought relief in district court under C.R.C.P. 106 against the enforcement of a resolution of the City Council of Broomfield, permitting a residence to be used as a live-in home for not to exceed six mentally retarded children.[1] The district court denied the relief. The plaintiffs appealed to the Colorado Court of Appeals, from which we accepted jurisdiction. We affirm.

The property involved is a single-family residence located at 1306 Dexter Street in Broomfield. It is owned by the Boulder County Board For Developmental Disabilities. This dwelling is across the street from the Bal Swan Children's Center, which provides training classes for mentally retarded children in Broomfield. The Board proposed to have it occupied by a college-educated married couple, who would act as surrogate parents for not to exceed six mentally retarded children ranging in age from five to nine years.[2] These children would attend the classes at Bal Swan Children's Center.

---

[1] A claim for damages in the action was dismissed without prejudice. Presumably, the plaintiffs intended to re-file it in the event they prevailed.

[2] The Board specified that "mentally retarded children" would not include mentally ill or emotionally disturbed children.

1306 Dexter is within an R-1 Low-Density Residential District under the Broomfield ordinance. "One family dwellings" are permitted in this district. Broomfield's zoning ordinance defines a "family" as:
"An individual or two or more persons related by blood or marriage, or an unrelated group of not more than three persons living together in a dwelling unit." Broomfield Ordinance No. 149, Article 26, Section 2 (11).
The city council placed the following conditions upon the permitted use: There should not be over six mentally retarded children; the approval would be valid only as long as the Board owned the property and conducted its live-in program therein; the property should be maintained in a manner comparable to that of adjacent properties; the ages of children commencing to live in the home should range from five to nine, and none were to remain in residence beyond "academic school age 12," the use was conditioned upon approval of and licensing by the Colorado Department of Social Services of the proposed program at 1306 Dexter; and the use should continue only so long as that department continued to approve and license the program.

The only issue which we address is whether a married couple and a maximum of six retarded children, for whom the couple are surrogate parents, constitute a "family" under the provisions of the ordinance. The district court concluded that, implicit in the definition of "family" as it is used in the ordinance, is the maintenance of a single housekeeping unit. It found that the interpretation of the ordinance by the city council was wholly consistent with that concept, and that the proposed use was "by right."

The district court also upheld the city council's resolution on the basis that this was an "accessory use" under the provisions of the ordinance. The city council did not consider the matter of accessory use when it adopted the resolution. Therefore, the district court's conclusion in this respect of necessity was predicated upon a *de novo* review. This is impermissible under C.R.C.P. 106 and we, therefore, do not consider the "accessory use" provision of the ordinance nor their effect. *Snyder v. City of Lakewood*, 189 Colo. 421, 542 P.2d 371 (1975) and *City of Colorado Springs v. District Court*, 184 Colo. 177, 519 P.2d 325 (1974).

The city council adopted the resolution on August 26, 1974. The action was filed in district court on September 10, 1974 and thereafter a number of preliminary matters were heard by the court. Following the filing of briefs, on January 3, 1975 the court heard oral arguments and took the matter under advisement. It announced the ruling of dismissal of the plaintiffs' claim under C.R.C.P. 106 on June 25, 1975.

On May 1, 1975 the following amendment to section 31-23-301, C.R.S. 1973 was adopted:

"(4) No statutory or home rule city or town, or any city and county, shall enact an ordinance prohibiting the use of a state-licensed group home for the developmentally disabled which serves not more than eight developmentally disabled persons and appropriate staff, as a residential use of property for zoning purposes. As used in this subsection (4), the phrase 'residential use of property for zoning purposes' includes all forms of residential zoning and specifically, although not exclusively, single-family residential zoning." Colo. Sess. Laws 1975, ch. 251, 31-23-301 at 934.

On July 14, 1975, subsections 30-28-115(2)(a) and (b), C.R.S. 1973 were adopted. They provide in part:

"The general assembly hereby finds and declares that it is the policy of the state to assist developmentally disabled persons to live in normal residential surroundings. Further, the general assembly declares that the establishment of state-licensed group homes for the exclusive use of developmentally disabled persons is a matter of statewide concern and that a state-licensed group home for eight developmentally disabled persons is a residential use of property for zoning purposes. The phrase 'residential use of property for zoning purposes,' as used in this subsection (2), includes all forms of residential zoning and specifically, although not exclusively, single-family residential zoning. 'Developmentally disabled' in this section means those persons having cerebral palsy, multiple sclerosis, mental retardation, autism, and epilepsy.

"Nothing in this subsection (2) shall be construed to supersede the authority of municipalities and counties to regulate such homes appropriately through local zoning ordinances or resolutions, except insofar as such regulation would be tantamount to prohibition of such homes from any residential district. . . ." Colo. Sess. Laws 1975, ch. 251, 30-28-115 at 933-34.

By an election held on November 4, 1975 Broomfield became a home rule city.

I.

■ We hold that this proposed group constituted a family "by right" under the terms of the ordinance. The fact that there would be as many as six children is not relevant. Obviously, six natural children may live with their parents lawfully in a zoned single-family dwelling. This ordinance does not mention adopted children and, under a strict construction of it, they would be excluded from a single-family dwelling. The only sensible construction is that the residence of a married couple and their six adopted children constitutes a one-family dwelling. We fail to see the distinction between adopted children and retarded children of tender age, so long as family characteristics are maintained.

Similar questions were presented in *Y.W.C.A. v. Board of Adjustment*, 134 N.J. Super. 384, 341 A.2d 356 (1975); *City of White*

*Plains v. Ferraioli*, 34 N.Y.2d 300, 313 N.E.2d 756, 357 N.Y.S.2d 449 (1974); and *Little Neck Community Association v. Working Organization*, 52 App. Div. 2d 90, 383 N.Y.S.2d 364 (1976). In each the same result was reached as by the district court and us here. In *Y.W.C.A.* it was stated that, to suggest that "families" composed of residents of group homes are to be distinguished from natural families in determining which single-family districts will be considered open to them, is to confuse the power to control physical use of premises with the power to distinguish among occupants making the same physical use of them. The following is found in *Ferraioli*:

"It is significant that the group home is structured as a single housekeeping unit and is, to all outward appearances, a relatively normal, stable and permanent family unit, with which the community is properly concerned." In *Little Neck* we find:

"It is our opinion that a group home for mentally retarded children constitutes a family for the purposes of a zoning ordinance. . . . 'Zoning is intended to control types of housing and living and not genetic or intimate and internal family relations of human beings.'"

## II.

 The plaintiffs contend that the statutory provisions adopted in 1975 are violative of the due process, equal protection and special class legislation provisions of the United States and Colorado constitutions. They also argue that, since Broomfield is now a home-rule city, statutes are unconstitutional as to it under *Colo. Const.* Art. XX, § 6. These were not issues before the district court and, if they are to be raised, it must be in another action. We decline to consider them in this review. Also, we do not consider the Board's contention that there is no conflict between the ordinance and the new statutes.

Judgment affirmed.