John LITTLEHORN, Pamela Littlehorn and Charles M. Goldben, Petitioners,

v.

Dennis STRATFORD and Joan Stratford, Respondents.

No. 81SC266.

Supreme Court of Colorado, En Banc.

Nov. 15, 1982.

Stitt, Wittenbrink & Nieman, Larry Berg, Westminster, for petitioners.

John D. Watson, Westminster, for respondents.

QUINN, Justice.

We granted certiorari to review the court of appeals' reversal of an order denying an application for injunctive relief initiated by the plaintiffs-respondents, Dennis and June Stratford, against the defendants-petitioners, John and Pamela Littlehorn. The Stratfords' application for injunctive relief was based upon the claim that the Littlehorns, in contravention of a restrictive covenant, intended to move their existing home onto a lot in a subdivision where the Stratfords owned neighboring property. The Adams County District Court denied the injunction primarily because the evidence failed to show the applicability of the restrictive covenants to the Littlehorn property. The court of appeals reversed and ordered that a permanent injunction issue. We reverse the judgment of the court of appeals because, in our view, 'the propriety of injunctive relief in this case depended upon the trial court's assessment of conflicting evidence and, under the record, we cannot say that the trial court erred as a matter of law.

In 1979 Pamela and John Littlehorn, who were then renting a home in Thornton, Colorado, learned that this house was to be razed for a shopping center development and decided to purchase the house and move it to another lot. In May 1980 the Littlehorns located a two and one-half acre site in the Wadley Farms Subdivision situated in Brighton, Colorado. They contacted Russell Watterson, the managing partner of Flora Associates, one of the original owners of the subdivision, and were informed of possible restrictive covenants on the property. Mr. Watterson suggested to the Littlehorns that they seek permission for the proposed move from the Wadley Farms Architectural Control Committee. The Littlehorns then obtained from the Wadley Farms Homeowners Association a copy of an unsigned document entitled "Declaration of Covenants, Conditions and Restrictions" (First Covenants). Although the document contained various covenants pertaining to "certain real property described on Exhibit A hereto, and referred to as the Wadley Farms Subdivision," there is no indication in the record that an "Exhibit A" was actually attached to the document.

The First Covenants provided for the creation of the Wadley Farms Architectural Control Committee "for the purpose of maintaining, within the Wadley Farms Subdivision, a style and nature of building design which is homogeneous to the area's physical setting." The Architectural Control Committee was granted the authority "to review applications and grant approval for exceptions to this Declaration," as long as the exceptions neither detracted from the aesthetic quality and economic value of other properties nor impaired the public health, safety or welfare. The restrictions in the First Covenants required that "[a]ll buildings or structures erected upon said property . . . be of new construction," and that "no used structure of any sort . . . be moved onto any Lot."

The Littlehorns in due course sought out Mr. Lloyd Holyoak, the chairman of the Architectural Control Committee, and requested an exception to the restrictive covenants. Mr. Holyoak, after conferring with other members of the committee, sent the Littlehorns a written confirmation, signed by him as "president" and dated June 9, 1980, which granted the Littlehorns permission to move their used structure onto the subdivision property. The Littlehorns thereafter purchased the Wadley Farms lot on June 10, 1980, from Russell Watterson, the manager of Flora Associates, and Richard Gormley, a real estate broker, for $26,-

500. All but $5,000 of the purchase price was financed by loans secured by two deeds of trust.

Apprehensive over the effect which the relocation of the Littlehorn's house would have on Wadley Farms property, Mr. and Mrs. Stratford filed a complaint for injunctive relief in the Adams County District Court, alleging that the Littlehorns were about to move the house onto the property in contravention of the restrictive covenants.[1] Attached to the complaint was a copy of a Declaration of Covenants identical to that previously given the Littlehorns by a representative of the Wadley Farms Homeowners Association.

The Stratfords' application for injunctive relief was heard by the court on September 18 and 19, 1980. During the hearing the Stratfords offered and the court admitted into evidence a document entitled "Declaration of Covenants, Conditions and Restrictions" (Second Covenants), which differed substantially from the First Covenants. In particular, the Second Covenants granted the Architectural Control Committee the limited authority to approve or disapprove of plans prior to the movement of any building onto the property without, however, the power granted by the First Covenants to allow exceptions to the restrictions. No evidence was offered to explain the reason for the two different sets of restrictive covenants.[2]

The Second Covenants, like the First Covenants, stated that they applied to "certain real property described on Exhibit A hereto, and referred to as the Wadley Farms Subdivision, Filing No. I."[3] No property description, however, was attached to either the First or Second Covenants. An additional problem created by the Second Covenants related to the ownership of the property at the time the covenants were executed. The Second Covenants were signed on January 28, 1977, by C.M. Goldben, the manager of North Washington Land Associates, and were recorded on April 20, 1977. They were not signed by a representative of Flora Associates, even though Mr. Watterson, managing partner of Flora Associates, testified that Flora Associates purchased its portion of the property in July of 1976. A plat entitled "Wadley Farms Subdivision First Filing," executed on March 18 and recorded March 25, 1977, declared that the owners of the property were "North Washington Land Associates, a Colorado Limited Partnership, and Flora Associates, a Partnership." According to Mr. Watterson, he acquired the Littlehorn parcel sometime in August 1979.

The court denied the Stratfords' application for injunctive relief. What the court considered controlling was the lack of sufficient evidence establishing "that the restrictive covenants applied to the property in question." In this respect the court specifically focused on the following factors: the execution of the Second Covenants by only one of the purported owners of the subdivision, North Washington Land Associates; the attempted incorporation in the First and Second Covenants of some other document which allegedly contained the legal description of the property subject to the

1. Charles M. Goldben, the managing partner of North Washington Land Associates, was also named as a defendant in the Stratfords' complaint. The extent of his participation in the proceedings below, however, is not disclosed by the record.

2. Apparently the Stratfords' counsel only noticed the differences between the two documents at the hearing. When the Second Covenants were introduced into evidence, the Stratfords' attorney stated that they were identical to the covenants attached to the complaint. When specifically asked by the judge on the second day of the hearing whether there was "a change in the section which says that the Architectural Control Committee has the right to grant exceptions," he answered, "none to my knowledge." Immediately prior to the judge's decision, however, the Stratfords' attorney asked the court to consider the "considerable" differences between the two documents as to the power of the Architectural Control Committee.

3. The covenants attached to the Stratfords' complaint as well as the covenants given the Littlehorns prior to the closing on their property contained this same provision, except that the words "Filing No. I" were not added to "Wadley Farms Subdivision."

covenants but which was never attached to either set of covenants; and the existence of substantial discrepancies in the First and Second Covenants with respect to the power of the Architectural Control Committee. The court of appeals reversed, concluding that the Second Covenants, which were recorded prior to the purchase by the Littlehorns of the Wadley Farm lot, applied to the Littlehorn property. Because the covenants prohibited the movement of any used structures onto any lot within the subdivision and did not vest the Architectural Control Committee with the power to grant an exception to the restriction, the court of appeals ordered that a permanent injunction should issue.

 Although the Littlehorns assert several grounds for reversal, we need only consider the threshold question relating to the propriety of the trial court's denial of the Stratfords' application for injunctive relief.[4] The legal principles which control the resolution of this question are well settled and may be simply stated. In civil actions the plaintiff typically bears the burden of proving the allegations of the complaint by a preponderance of the evidence. Section 13–25–127, C.R.S.1973. Generally, a party seeking an injunction must show in the first instance the probability of success on the merits of the underlying claim. *E.g., Combined Communications Corp. v. City and County of Denver,* 186 Colo. 443, 528 P.2d 249 (1974); *Wood v. Kreps,* 161 Colo. 37, 419 P.2d 310 (1966). Additionally, the party seeking injunctive relief must clearly show the likelihood of real and irreparable injury to a legally cognizable interest. *E.g., City*

*and County of Denver v. Glendale Water and Sanitation District,* 152 Colo. 39, 380 P.2d 553 (1963); *Crosby v. Watson,* 144 Colo. 216, 355 P.2d 958 (1960). A further requirement is that the equities of the case weigh in favor of the party who seeks the issuance of the injunction. *E.g., Combined Communications Corp. v. City and County of Denver, supra.* When the trial court serves as the trier of fact, its decision to deny injunctive relief will not be disturbed upon appellate review unless it can be said that the evidence compels a contrary result as a matter of law. *City and County of Denver v. Glendale Water and Sanitation District, supra.* In sum, this court must consider the evidence in the record in a light most favorable to the trial court's determination, giving due regard to its fact-finding role and its prerogative to draw inferences and conclusions from the evidence presented before it. *See, e.g., Peterson v. Ground Water Commission,* 195 Colo. 508, 579 P.2d 629 (1978); *Deas v. Cronin,* 190 Colo. 177, 544 P.2d 991 (1976); *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970); *Adler v. Adler,* 167 Colo. 145, 445 P.2d 906 (1968).

 In this case the Stratfords had the burden of establishing the existence of valid restrictive covenants applicable to the Littlehorn property. The trial court denied injunctive relief primarily because the Stratfords failed to carry their burden.[5] In our view the trial court's determination of this matter finds adequate support in the record. We examine briefly the respective bases underlying the trial court's denial of the Stratfords' application for an injunction.

**4.** Issues which we need not discuss relate to the validity of the "used structure" restriction in the restrictive covenants, the general standards applicable to the decisions of an architectural control committee, and the propriety of the Architectural Control Committee's grant of an exception to the Littlehorns under the facts of this case.

**5.** Because we uphold the trial court's conclusion that the evidence failed to establish that valid restrictive covenants applied to the Littlehorn property, we need not determine whether the trial court properly "balanced the equities" in denying the Stratfords' application for an

injunction. We note in passing, however, that there were a number of factors indicating that the equities were in favor of the Littlehorns. They made every effort to comply with what they understood, through the statements of Mr. Watterson and Mr. Holyoak, to be the governing restrictive covenants. Also, they received written permission from the Architectural Control Committee to move their home onto the subdivision property. Finally, the court specifically found that the movement of the Littlehorn home onto the Wadley Farm Subdivision enhanced the value of the surrounding properties.

The court found that only one of the owners of the subdivision, North Washington Land Associates, signed the Second Covenants recorded on April 20, 1977. The plat of Wadley Farms Subdivision First Filing, which was filed of record on March 25, 1977, recited that North Washington Land Associates and Flora Associates owned the Wadley Farms Subdivision. Included within the recorded plat was the two and one-half acre site ultimately purchased by the Littlehorns. Under this state of the record it was within the trial court's discretion to accept the recorded plat as evidence of Flora Associates' ownership interest in the subdivision. Since the restrictive covenants were not executed by Flora Associates, it was not unreasonable for the trial court to question whether a valid covenant ever came into being.

Moreover, the evidence was tenuous at best with respect to the precise property to which the restrictive covenants applied. Although the Second Covenants purported to extend to the property described on an attached "Exhibit A," no such exhibit was ever produced. Under the circumstances present here, the generic reference in the Second Covenants to "certain real property described on Exhibit A . . . and referred to as the Wadley Farms Subdivision, Filing No. I" is not sufficient, without further description, to subject each individual parcel of property within the subdivision to the restrictions. *See Nelson v. Farr,* 143 Colo. 423, 354 P.2d 163 (1960). At the time the Second Covenants were executed, the later recorded plat of Wadley Farms Subdivision First Filing had not been executed and there is no evidence that it was even in existence. Thus there is no assurance that the property to which the Second Covenants refer necessarily had the same boundaries as the properties ultimately platted. The slight discrepancy in the names utilized in the recorded plat—Wadley Farms Subdivision First Filing—and in the Second Covenants—Wadley Farms Subdivision, Filing No. I—only sharpens the question whether the Second Covenants were intended to apply to the precise land later platted. Compounding the confused state of the record is the discrepancy between the First and Second Covenants regarding the authority of the Architectural Control Committee, thus suggesting that certain subdivision properties might well have been subject to one document and other subdivision properties subject to the other.

All these uncertainties, in our view, adequately account for the trial court's understandable inability to determine which properties, if any, were subject to the restrictions.[6] The Stratfords had the burden of presenting evidence sufficient to persuade the trial court of an existing restrictive covenant applicable to the two and

---

**6.** We recognize that questions relating to whether a deed or covenant is ambiguous and the interpretation of the terms of an instrument raise issues of law, and findings of the trial court with respect to these matters are not binding upon a reviewing court. *E.g., Alley v. McMath,* 140 Colo. 600, 346 P.2d 304 (1959). In this case, however, the trial court's denial of injunctive relief was not based upon a determination that an ambiguity existed in the Littlehorns' deed. Although the record includes two deeds of trust from the Littlehorns to the public trustee, the deed of conveyance to the Littlehorns was never offered into evidence. Also, without the Littlehorn deed in evidence, any argument that the provisions of the deed gave the Littlehorns notice of the applicability of the restrictive covenants to their property is of no avail. Nor did the trial court decide the case on the basis of any ambiguity with respect to the meaning of the restrictive covenants. Rather, the trial court grounded its decision upon the unsettled character of the record with respect to the ownership of the subdivision property at the time of the execution of the restrictive covenants and the particular property to which the covenants applied. Under these circumstances we see no reason not to accord the order denying injunctive relief the usual deference given to a trial court's resolution of factual issues upon disputed evidence. *E.g., Colorado River Water Conservation District v. City and County of Denver,* 640 P.2d 1139 (Colo.1982); *Deas v. Cronin,* 190 Colo. 177, 544 P.2d 991 (1976); *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970); *Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970); *Gosch v. Gomez,* 168 Colo. 296, 450 P.2d 1016 (1969).

one-half acre site purchased by the Littlehorns. This burden of persuasion the Stratfords failed to carry. Given the problematic state of the record on matters essential to the Stratfords' claim for injunctive relief, we cannot say that the trial court's resolution of this controversy is erroneous as a matter of law. The court of appeals, therefore, erred in reversing the trial court's order denying injunctive relief.

The judgment is reversed.