**EVERGREEN MEADOWS HOME-OWNERS' ASSOCIATION, Lillian Pauline Miller, Robert Eugene Miller, William L. Weaver, Nancy Weaver, Theodore Ziegers, Marianne Ziegers, Coleman Gulley, and Mrs. Coleman Gulley, Plaintiffs-Appellees,**

v.

**DOUBLE D MANOR, INC.; Marjorie Rust; Mark G. McGee; Ellen McGee; Elias A. Mandell; and Joy L. Mandell, Defendants-Appellants.**

No. 85CA0088.

Colorado Court of Appeals, Div. I.

March 26, 1987.

Rehearing Denied June 4, 1987.

Certiorari Granted (Double D) Sept. 8, 1987.

Richard M. Huckeby, Denver, for plaintiffs-appellees.

Feuer, Flossic & Rich, Jack M. Wesoky and James A. Kaplan, Englewood, for defendants-appellants.

PIERCE, Judge.

The defendants, Double D Manor, Inc., and the property owners Double D Manor, Inc., Marjorie Rust, Mark G. McGee, Elias A. Mandell, and Joy L. Mandell, appeal the trial court's grant of a permanent injunction barring its use of property in the Evergreen Meadows Subdivision as group homes for developmentally disabled children. We affirm.

Double D Manor is a Colorado nonprofit corporation whose purpose is to provide a home life situation for its residents. When this case arose, it had applied for a state license to operate as a residential child care facility as defined in § 26–6–102(8), C.R.S. (1982 Repl. Vol. 11). It occupies two adjoining lots in the Evergreen Meadows Subdivision. Each lot has one dwelling designed to house a single family on it. Double D Manor planned to place a total of 16 developmentally disabled children in the two houses.

The plaintiffs, Evergreen Meadows Homeowners' Association and several indi-

vidual residents, sought preliminary and permanent injunctions to bar the defendants from using the property as a facility or residence for developmentally disabled persons. They asserted that such an operation violated the restrictive covenants of the Evergreen Meadows Subdivision. The covenant at issue states: "[A]ll sites shall be for residential use only, with only one single-family dwelling permitted on any site."

The parties stipulated to certain facts, among which was that the managers of the project would not reside in either house, and submitted the matter to the trial court on written briefs. The trial court ruled, as a matter of law, that Double D Manor's use of the two properties as a group home violated the restrictive covenants of the subdivision. It held the clear intent and plain and unambiguous purpose of the covenant was to restrict the use of each lot in the subdivision to a single family residence. We agree.

The above-quoted covenant contains a single complete concept which is clear and unambiguous.

The language of the covenant is clear. Nothing within that language would indicate an intent that it govern only architectural design to the exclusion of use. As stated in *D.C. Burns Realty & Trust Co. v. Mack*, 168 Colo. 1, 450 P.2d 75 (1969):

"It is urged that covenants creating restrictions upon the free use of land are to be strictly construed against the limitation. This rule may not today have the sanctity that it has possessed in the past. In any event, it has no application when the language is definite in its terms. One must follow the dictates of plain English."

The use proposed here is essentially commercial and would populate these two lots with a significant number of persons, only a few, if any, who would have a biological relationship; and additionally, there would be no parental figures in the residence. Under such circumstances, the single family requirement of the covenant would not be met.

Since the phrase "single-family dwelling" is not specifically defined, it should retain its traditional definition and, thus, would not include a group residence for the developmentally impaired lacking the characteristics of a normal and permanent family unit maintaining the usual family-style living arrangement. *See Region 10 Client Management, Inc. v. Town of Hampstead*, 120 N.H. 885, 424 A.2d 207 (1980); *City of White Plains v. Ferraioli*, 34 N.Y.2d 300, 357 N.Y.S.2d 449, 313 N.E.2d 756 (1974).

The judgment of the trial court is therefore affirmed.

CRISWELL, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

Double D Manor asserts the trial court erred in its interpretation of the restrictive covenant. It contends the covenant contains two independent restrictions, a use restriction that all sites be used for residential purposes, and a structural restriction which limits the type of structure that may be placed on a site. I agree.

Appellate courts are not bound by trial court determinations of whether a written covenant is ambiguous, nor of their interpretations of the covenant. *Littlehorn v. Stratford*, 653 P.2d 1139 (Colo.1982). Also, all restrictions as to the use or occupancy of real property are to be strictly construed with all doubts resolved against the restriction and in favor of free and unrestricted use of the property. Section 38–34–103, C.R.S. (1982 Repl. Vol. 16A); *Flaks v. Wichman*, 128 Colo. 45, 260 P.2d 737 (1953).

The covenant in this case is ambiguous since it is subject to two possible interpretations. The trial court followed one possible interpretation, finding "single-family" modified "residential use" such that the property could be used only for single-family residential purposes. However, the covenant can also be interpreted as two independent restrictions, a residential use restriction and a single-family structure restriction. I would adopt this second interpretation since it provides the least restric-

tion on the use of the property. Section 38–34–103. That is, the use must be residential but is not limited to use by a single-family, so long as it is situated in an identifiable single family dwelling structure. This structural restriction lends itself to architectural control within the development and, thus, would prohibit construction of a duplex or other multi-plex dwellings.

My interpretation of the covenant is supported by the announced public policy of this state to assist developmentally disabled persons to live in normal residential surroundings. *See* § 30–28–115(2)(a), C.R.S. (1986 Repl. Vol. 12A) and 31–23–303(2)(a), C.R.S. (1986 Repl. Vol. 12B).

Under similar restrictive covenants and factual situations, courts in other jurisdictions have adopted the same interpretation. The Nebraska Supreme Court held "single family dwelling" described an architectural style and not the relationship required of the persons occupying the structure. *Knudtson v. Trainor*, 216 Neb. 653, 345 N.W.2d 4 (1984). The Supreme Court of North Carolina held that a provision in a restrictive covenant specifying the type of structure which may be located on a lot does not by itself constitute a restriction to a particular use of the premises. *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 274 S.E.2d 174 (1981).

The majority concludes that the plaintiff is conducting a commercial operation and, therefore, the use is not residential. I disagree.

As Double D Manor emphasizes, the manner in which the residents use the home shows the use to be residential. The residents share bedrooms but have their own beds and dressers. They share the common areas of the house and the household chores. They eat together, family-style, with the children helping prepare meals. All the children attend Jefferson County public schools and are assigned a staff advocate to act as a surrogate parent. The children are permanent residents of Double D Manor until they reach the age of 21 or can move to a more self-sufficient environment. They are supervised 24 hours a day. The residents function in the home much like residents of any other home.

Thus, I believe we must weigh this dual nature of Double D Manor's operation to determine whether its use of the property is for business or residential purposes.

Other jurisdictions have addressed this same issue. The majority have held that, under restrictive covenants similar to the one at issue, use of property as a group home for the developmentally disabled is residential in nature. *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc., supra; Knudtson v. Trainor, supra; Concord Estates Homeowners Ass'n v. Special Children's Foundation, Inc.*, 459 So.2d 1242 (La.App.1984); *Beverly Island Ass'n v. Zinger*, 113 Mich.App. 322, 317 N.W.2d 611 (1982); *Leland Acres Home Owners Ass'n, Inc. v. R.T. Partnership*, 106 Mich.App. 790, 308 N.W.2d 648 (1981).

Giving words their plain meaning, I would hold that a building limited to residential purposes is a building in which people make their homes, as distinguished from where people conduct business or commerce. *Knudtson v. Trainor, supra; Concord Estates Homeowners Ass'n v. Special Children's Foundation, Inc., supra.*

Although the receipt of compensation may be a factor to consider, it is not controlling. The focus must be on the activity in the house and how it parallels the ordinary and common meaning of use for residential purposes. *Beverly Island Ass'n v. Zinger, supra.* The fact that Double D Manor is compensated for its cost to operate and to provide paid employees to supervise the residents does not change the character of the actual use of the home from a residence to a business. *Concord Estates Homeowners Association, Inc. v. Special Children's Foundation, Inc., supra.* Receipt of money to support the care of residents is incidental to the purpose of the home, which is to provide a home life situation for the residents and not to reap monetary benefit. *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc., supra.*

Considering the method by which the group homes operate together with the an-

**42**

nounced public policy of Colorado to assist developmentally disabled persons to live in normal residential surroundings, *see* § 30–28–115(2)(a) and 31–23–303(2)(a), I would conclude that the operation of Double D Manor is a residential use of a single-family dwelling house.

A group home for the developmentally disabled may not be within the traditional understanding of a residence, but the manner in which Double D Manor used the homes is clearly within the meaning of residential usage.

Therefore, I would reverse the judgment of the trial court and remand with instructions to dismiss plaintiffs' complaint.