GREENBRIER–CLOVERDALE HOME-OWNERS ASSOCIATION, a Colorado non-profit corporation; James D. Roucis; Mary Ann Roucis; Edgar E. Gerken; Dolores M. Gerken; Paul M. Junemann; Delcia J. Junemann; Jean Johnson; Arthur H. Johnson; and Mary M. Moschetti, Plaintiffs–Appellants and Cross–Appellees,

v.

Fernando H. BACA; Geraldine E. Baca; and Jefferson County Community Center, a Colorado non-profit corporation, Defendants–Appellees and Cross–Appellants.

No. 86CA0890.

Colorado Court of Appeals, Div. IV.

Sept. 29, 1988.

Robinson & Scheurer, P.C., James F. Frost, Lakewood, for plaintiffs-appellants and cross-appellees.

No appearance for Fernando H. and Geraldine E. Baca.

Bruno, Bruno & Colin, P.C., Louis B. Bruno, James C. Coyle, Lakewood, for defendants-appellees and cross-appellants Jefferson Community Center.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn Lievers, Asst. Atty. Gen., Denver, amicus curiae for Colorado Dept. of Institutions.

**2** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

JONES, Judge.

Plaintiffs appeal the trial court's declaratory judgment in favor of defendants, Fernando H. and Geraldine E. Baca (Bacas), and Jefferson County Community Center (JCCC), which held that the use of the Bacas' residence as a group home for eight developmentally disabled adults does not violate certain restrictive covenants. We affirm.

Plaintiffs are owners of real property within the Greenbrier Subdivision in Jefferson County and are members of the homeowners' association. In October 1984, the Bacas purchased a house located in Greenbrier. Thereafter they contracted with JCCC, a Colorado non-profit corporation, to provide a group home for eight, unrelated, developmentally disabled adults.

All property in Greenbrier is sold subject to protective covenants recorded in 1960. The plaintiffs commenced this action, seeking declaratory and injunctive relief to prevent the intended use of the Baca house, claiming that, by providing a home for nonfamily members, the Bacas violated a provision of the covenants that is concerned with "Land Use and Building Type."

The covenant in question states as follows:

> "Land Use and Building Type. No site shall be used except for residential purposes except as is hereinafter provided. No building shall be erected, altered, placed or permitted to remain on any site other than single-family dwellings not to exceed one and one-half stories in height, having a roof ridge line not more than twenty feet above grade. Such buildings may have private garages for not more than three cars and other outbuildings directly incidental to residential use." (emphasis added)

There is no later reference in the covenants modifying the requirement of use only for "residential purposes."

In dismissing plaintiffs' complaint, the trial court concluded that the covenant, properly interpreted, restricted the use of the sites within the subdivision to "residential" uses. It also concluded, however, that the limitation relating to "single family dwellings" was a limitation upon the nature of the *structures* allowed to be erected, not a restriction upon the *use* to which those structures could be put. Thus, so long as the dwelling was used for residential purposes, there was no requirement that it be used only by a "single family." Finally, it concluded that the contemplated use of the Baca house was not violative of the covenant.

Plaintiffs contend that the trial court erred when it held that defendants' use of the Baca house as a group home for the developmentally disabled did not violate the single family dwelling intent as expressed in the covenant at issue. We disagree.

▮▮▮▮ A restrictive covenant that is clear on its face should be enforced as written. *Flaks v. Wichman,* 128 Colo. 45, 260 P.2d 737 (1953). Any doubts as to the meaning of a covenant should be resolved against restricting the use of the land and in favor of its free and unrestricted use. *Flaks v. Wichman, supra; Wilson v. Goldman,* 699 P.2d 420 (Colo.App.1985).

The covenant very plainly refers to "Land Use and Building Type," and at no place in that covenant or any other is reference made to the relationship of those residing within the buildings. The buildings must conform to certain design and construction standards, referred to as "single family dwellings" to distinguish them from duplexes, triplexes, or apartment buildings.

Had the drafters of the covenant desired to set forth limits as to relational status of the persons pursuing "residential uses" within the dwellings, they would have done so. Certain zoning law definitions might serve as useful guides for such purposes. *See, e.g.,* Denver Revised Municipal Code § 59–2(131) (1982); *see also Zavala v. City & County of Denver,* 759 P.2d 664 (Colo. 1988).

Furthermore, the trial court properly relied on the interpretation another division of this court supplied as to a covenant similar to the one at issue here in *Richey v. Olson,* 709 P.2d 963 (Colo.App.1985). In *Richey,* the subject covenants stated as follows:

"Covenant A:

All lots in the tract shall be known and described as residential lots. No structures shall be erected, altered, placed, or permitted to remain on any residential building plot other than one detached single-family dwelling, and a private garage for not more than 2 cars.

"Covenant E:

No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood."

In affirming the trial court's order denying a permanent injunction restraining the Olsons from operating a bed and breakfast business in their residence as violative of Covenant E, this court opined that "Covenant A addresses only the type of building permitted within the subdivision." The court in *Richey* went on to say:

"Because the Olsons' residence complied with the structural requirements of Covenant A, the trial court correctly concluded that this covenant had not been violated by the Olsons' operation of a bed and breakfast business."

We conclude that by their reliance on the rubric of *D.C. Burns Realty & Trust Co. v. Mack*, 168 Colo. 1, 450 P.2d 75 (1969), plaintiffs seek to render the language of the covenant in this case more restrictive than its framers initially intended. *See Richey v. Olson, supra.*

The *D.C. Burns Realty* case involved a covenant which expressly stated: "none of said lots shall be ... occupied for other than private *single family residential purposes....*" (emphasis added) The express language and meaning of that covenant are distinguishable from those of the covenant at issue here. *See Evergreen Meadows Homeowners' Ass'n v. Double D Manor, Inc.*, 743 P.2d 39 (Colo.App.1987) (Tursi, J., dissenting) (*cert. granted* September 8, 1987).

The overwhelming weight of cases construing covenants such as the one at issue are to the effect that any restrictions must be clearly established and strictly construed, with limitations by implication not being favored. *See Concord Estates Homeowners Ass'n v. Special Children's Foundation, Inc.*, 459 So.2d 1242 (La.App. 1984); *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 274 S.E.2d 174 (1981); *Sissel v. Smith*, 242 Ga. 595, 250 S.E.2d 463 (1978); *Jordan v. Orr*, 209 Ga. 161, 71 S.E.2d 206 (1952).

Consideration of the language of the covenant here, including its title, strictly construed, reveals that the trial court correctly interpreted the language as a restriction upon the types of buildings which may be constructed on the lots in Greenbrier, and not as a limitation on the types of activities that can generally take place within buildings so constructed, insofar as such uses are "residential" in nature. *See Sissel v. Smith, supra.* The provision in a restrictive covenant as to the type of structure which may be located upon a lot does not, by itself, constitute a restriction of the premises to a particular use. *J.T. Hobby, supra.*

Because of our resolution of this appeal, we need not address the cross-appeal of JCCC.

The judgment is affirmed.

BABCOCK, J., concurs.

CRISWELL, J., dissents.

CRISWELL, Judge, dissenting.

I respectfully dissent.

I remain convinced that a covenant that restricts the use of land to residences and that restricts the type of residences that may be erected to "single-family dwellings" unambiguously restricts the use of structures built on that land, as well as their design. *See Evergreen Meadows Homeowners Ass'n v. Double D Manor, Inc.*, 743 P.2d 39 (Colo.App.1987). Indeed, I do not know how to recognize a "single-family dwelling," except by reference to a structure's use, since many structures, although perhaps designed to house only a single family, are, in fact, utilized for apartment houses, boarding houses, fraternity houses, and a variety of other purposes. I cannot agree, as the majority's

interpretation of the covenant would suggest, that its framers did not intend to bar the use of this property for these purposes.

On the other hand, I recognize that the use of a structure as a group home may be considered to be a "single family" use either for zoning purposes, *compare Hessling v. Broomfield*, 193 Colo. 124, 563 P.2d 12 (1977) *with Roundup Foundation, Inc. v. Board of Adjustment*, 626 P.2d 1154 (Colo.App.1981), or for purposes of a private covenant that restricts the structure's use. *Bellarmine Hills Ass'n v. Residential Systems Co.*, 84 Mich.App. 554, 269 N.W.2d 673 (1978). Thus, we are not bound to conclude that the defendants' use of the property here was in violation of the covenant's terms even if we conclude that those terms prevented any use other than a single family use.

The trial court found that defendants' use of the property was for "residential" purposes. However, since it concluded that the covenant did not restrict its use to a single family, it did not reach the question, which is primarily a factual one, whether the operation of the group home here can be considered to be a single family use. Therefore, I would reverse the trial court's judgment, which was based upon its interpretation of the covenant, and I would remand this cause to that court for consideration of this latter issue.