**WOODMOOR IMPROVEMENT ASSOCIATION, a Colorado Non–Profit Corporation, Plaintiff–Appellant,**

v.

**Leonard I. BRENNER and Mary Jane Brenner, Defendants–Appellees.**

No. 94CA0203.

Colorado Court of Appeals,
Div. V.

May 16, 1996.

Sparks Dix, P.C., Kenneth Sparks, Colorado Springs, for Plaintiff–Appellant.

Simons & Martin, P.C., Frank S. Simons, Colorado Springs, for Defendants–Appellees.

The Law Office of Barney Iuppa, Barney Iuppa, Colorado Springs (On the Answer Brief).

Opinion by Judge TAUBMAN.

In this action by a homeowners' association to enforce a restrictive covenant prohibiting homeowners from having "outside aerials or antennas," plaintiff, Woodmoor Improvement Association (WIA), appeals the judgment of the trial court denying its request for injunctive relief and permitting defendants, Leonard I. and Mary Jane Brenner, to maintain a

satellite dish antenna on their property. We affirm.

WIA is a non-profit corporation formed for the purpose of ensuring the value of some 2,500 lots in the Woodmoor subdivision through the enforcement of recorded restrictive covenants. Article V, § 10 of the covenants states that: "Outside aerials or antennas are not permitted."

In 1990, the Brenners sought and received approval from WIA's Architectural Control Committee (the Committee) for the construction of a new home with an adjacent satellite dish. The plan and specifications submitted by the Brenners and considered by the Committee clearly indicated that a satellite dish would be situated next to their new home. The Brenners also presented a three-dimensional model of their new home that included a model of the satellite dish and a surrounding wall intended to screen it from the view of passersby.

As conditions to its approval of the building of the satellite dish, the Committee required that the Brenners obscure it from view by surrounding it with a fence or wall and also required that the satellite dish and fence be painted the same color as the house.

Following this approval, the Brenners began construction of their new home. They spent approximately $26,000 for the satellite dish and a sophisticated home entertainment system and spent approximately $4,000 for the fence to enclose the satellite dish.

A monitor appointed by the Committee oversaw the installation of the satellite dish and its accompanying fence and, early in 1993, certified to the WIA board that the satellite dish and surrounding fence had been installed in conformance with the Committee's criteria for approval.

Although a decision of the Committee approving building plans and specifications may be appealed to the Board of Directors of WIA by a member homeowner, no appeals were filed. In 1992, however, when the members of the Committee that had originally approved the Brenner satellite dish were replaced, a new board sought to enforce the covenant prohibiting outside aerials or antennas and requested that the Brenners remove their satellite dish.

When the Brenners refused to do so, WIA brought suit seeking a permanent injunction to prohibit them from maintaining the satellite dish. Following a trial to the court, the court concluded that the Brenners' satellite dish was an aerial or antenna generally prohibited by the covenants, but nevertheless held that WIA was equitably estopped from enforcing that covenant provision against the Brenners. This appeal followed.

## I. Architectural Control Committee Authority to Approve Satellite Dish

WIA contends that the Committee lacked authority to approve the Brenners' plans for a satellite dish and, therefore, the Committee's 1990 approval of the Brenners' plans to install a satellite dish must be set aside. We disagree.

Relying on *Stratford v. Littlehorn*, 635 P.2d 910 (Colo.App.1981), *rev'd on other grounds*, 653 P.2d 1139 (Colo.1982), and *Wilson v. Goldman*, 699 P.2d 420 (Colo.App. 1985), WIA argues that the Committee had no authority to grant an exception to the express provisions of the covenants. It maintains that because the covenants plainly prohibit "outside aerials or antennas," a term that in its view included satellite dishes, the Committee acted in excess of its authority in 1990 by approving the Brenners' plans for installation of a satellite dish.

In our view, both *Stratford* and *Wilson* are distinguishable. In *Stratford*, the protective covenants of a subdivision prohibited used structures from being moved onto any lot. The architectural control committee of that subdivision nevertheless granted an exception to the express provisions of the covenants. A division of this court concluded that because the covenants at issue were clear, they should have been enforced as written to prohibit residents from moving an older home onto their property.

■ Here, by contrast, there was a dispute concerning the interpretation of the restrictive covenant that prohibited outside aerials or antennas. Although WIA contends

that the meaning of this restrictive covenant is clear, and that it clearly applies to satellite dishes, the Brenners take the opposite view. They have at all times argued that, inasmuch as satellite dishes were not in existence when this covenant was promulgated in 1971, the restrictive covenant at issue does not apply to such devices.

The Brenners presented testimony at trial that members of the Committee had interpreted the covenant at issue to apply only to rooftop aerials or antennas, and not to satellite dishes. Satellite dishes, they contend, were otherwise permitted, subject to additional covenant provisions that required unsightly additions or structures to be screened from public view.

Accordingly, this is not a case where an architectural control committee granted an exception to an unambiguous provision of a covenant. Rather, the Committee was simply interpreting the covenant in favor of the Brenners based upon conflicting interpretations of it.

*Wilson* is also distinguishable. There, restrictive covenants prohibited fences from being erected around any homeowner's lot. The defendant in that case nevertheless built a fence around his property based on the verbal assurances of only one member of the architectural control committee. An immediate appeal was brought against the defendant by several homeowners and the committee as a whole.

Here, by contrast, the Brenners gained official approval for the satellite dish from the committee as a whole. Also, the record reveals that no appeal was brought against the Brenners until two years after placement of the satellite dish had been approved. Thus, we disagree with WIA and conclude that both *Stratford* and *Wilson* are distinguishable from the facts of the instant case.

## II. Equitable Estoppel

WIA next contends that the trial court erred in concluding that it was equitably estopped from applying the covenant regarding outside aerials and antennas to the Brenners. Specifically, it asserts that equitable estoppel does not apply; that, in the alterna-

tive, the reliance element of the equitable estoppel test was not met; and finally, that there can be no governmental estoppel as a matter of law. We are not persuaded by any of these contentions.

### A.

WIA first asserts that the principles of equitable estoppel do not apply when there is a clear violation of the covenants. We do not agree.

■ Generally, protective covenants that are clear on their face must be enforced as written. However, equity may fashion a remedy to effect justice suitable to the circumstances of the case. *Wilson v. Goldman, supra.*

■ The elements of estoppel as they relate to the right to enforce a covenant are full knowledge of the facts, unreasonable delay in the assertion of an available remedy, and intervening reliance by and prejudice to another. *Barker v. Jeremiasen,* 676 P.2d 1259 (Colo.App.1984).

■ Further, the doctrine of equitable estoppel may be applied to preclude enforcement by the architectural control committee of a homeowners' association of a restrictive covenant which inures to the benefit of all lot owners in the subdivision. In such case, application of the doctrine requires that the property owner reasonably rely on the actions or representations of the architectural control committee. *First Hyland Greens Ass'n v. Griffith,* 618 P.2d 745 (Colo.App. 1980).

Although WIA argues that *Stratford v. Littlehorn, supra,* and *Wilson v. Goldman, supra,* must control, we have already determined above that those cases are distinguishable from the instant case. Also, because *Stratford* was not decided on the basis of equitable estoppel, it does not preclude application of that doctrine here.

Moreover, even if the Committee's approval of the satellite dish did violate an express provision of the covenants, the principles of equitable estoppel would still apply to the facts of this case. *See Wilson v. Goldman, supra* (violations of restrictive covenants may

give way to equitable considerations); *Hargreaves v. Skrbina*, 662 P.2d 1078 (Colo.1983) (equitable considerations may excuse zoning violations).

■ Here, the trial court concluded that the Brenners relied on the representations of the Committee to their detriment, that such reliance was reasonable, and that, therefore, WIA was equitably estopped from asserting a violation of the covenants in regard to the satellite dish. These conclusions are amply supported by the record.

The Brenners testified that they spent some $30,000 to install their satellite dish and home entertainment system in express reliance on the Committee's approval of their plans. Subsequently, the Committee's monitor approved the manner in which the satellite dish had been installed. No appeal was taken to the WIA board from the decision of the Committee. Under these circumstances, reliance by the Brenners was reasonable.

Thus, the trial court properly concluded that WIA could be equitably estopped from enforcing its restrictive covenant.

### B.

WIA, however, argues that even if the doctrine of equitable estoppel is applicable here and even if the Brenners detrimentally relied on the Committee's approval by paying for a new satellite dish and home entertainment system, the Brenners still did not satisfy the reliance element of the estoppel doctrine.

■ More specifically, WIA asserts that sufficient reliance for estoppel exists only when a homeowner's action is taken with full knowledge that it both violates the covenants and will not be enforced. Thus, WIA maintains that inasmuch as the Brenners consistently asserted that satellite dishes did not violate the covenants, they could not have reasonably relied on any actions of the Committee. We are not persuaded by this argument.

*Barker v. Jeremiasen, supra,* upon which WIA relies, is distinguishable from the instant case. There, the court held that the defendants did not establish detrimental reliance by constructing buildings in connection with a horse breeding operation because they believed that such buildings were consistent with the restrictive covenants at issue there. Here, however, the Brenners relied not simply on their own interpretation of a restrictive covenant, but also on the interpretation that was formally approved by the Committee.

Thus, under the circumstances presented here, we conclude that the Brenners adequately demonstrated detrimental reliance in support of their claim of equitable estoppel.

### C.

Next, WIA argues that because homeowner associations have been given much of the governing power of a city and estoppel does not lie against a city based on an *ultra vires* act by it, there can be no finding of estoppel against WIA. We disagree.

■ WIA bases its assertion that homeowner associations have been given much of the governing power of a city on the Colorado Common Interest Ownership Act, § 38-33.3-101, et seq., C.R.S. (1995 Cum.Supp.). That act establishes a comprehensive and uniform framework for the creation and operation of homeowner associations. Nevertheless, WIA cites no authority, and we are aware of none, that supports the proposition that enactment of a legislative scheme governing the operation of homeowners' associations thereby transforms such homeowners' associations into cities or other governmental entities.

Thus, even if we assume that the doctrine of estoppel does not lie against a city or other governmental entity based on its *ultra vires* act, the doctrine of equitable estoppel may be asserted against a homeowners' association.

### III.

■ Finally, WIA contends that because Leonard Brenner served as a director of the WIA board, he breached his fiduciary duty to WIA, a nonprofit corporation, by seeking approval for the satellite dish. We do not agree.

■ Directors of a corporation occupy a fiduciary relationship and owe a fiduciary duty to the corporation. *Rifkin v. Platt,* 824 P.2d 32 (Colo.App.1991); *cf.* § 38–33.3–303(2)(a), C.R.S. (1995 Cum.Supp.) (effective July 1, 1992, and providing that in certain circumstances, "the officers and members of the executive board are required to exercise the care required of fiduciaries of the unit owners.").

■ A fiduciary has a duty to deal with utmost good faith and solely for the benefit of the beneficiary. *Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988). A fiduciary's obligations to the beneficiary include, among other things, a duty of loyalty and a duty to deal impartially with beneficiaries. *Bailey v. Allstate Insurance Co.,* 844 P.2d 1336 (Colo. App.1992).

Here, as prospective homeowners in the subdivision, the Brenners properly submitted an application for construction, including the plan and specifications, to the Committee. Although Leonard Brenner was a director of the WIA board, he was not involved in the decision whether to grant approval for the home or the satellite dish. Thus, we conclude that he did not breach a fiduciary duty to the corporation.

Judgment affirmed.

ROTHENBERG and CASEBOLT, JJ., concur.